MARY J. KING, plaintiff in error, *vs.* JOSHUA KING, *et al.*, defendants in error.

Where a note was given for trust property payable to the trustee, which note was placed in the hands of an attorney at law for collection by the trustee, suit instituted thereon, and judgment obtained for the amount thereof, which judgment was paid by the defendant in Confederate notes, (the common currency of the country at that time,) to the attorney, and received by him in satisfaction of said judgment, with. out objection at the time, and the money so collected by the attorney, was paid over by him to his client, the trustee, and received by him without objection at the time : *Held*, that, on a bill filed by the *cestui que trusts* against the maker of the note, the attorney at law, and the trustee, to account for the trust funds, the maker of the note who had paid it, and the attorney who had collected it in Confederate Treasury notes, *in good faith*, and paid the same over to the trustee in like good faith, which was received by the latter without objection, the maker of the note will be protected in such payment to the attorney of the trustee—and the attorney will be protected in the payment thereof to his client, the trustee : *Held*, also, that a trustee having possession of trust property, is bound to use ordinary diligence in the preservation, and protection of the same, and that if he did not intend, or desire, to receive the Confederate money in payment of the note, he should have given his attorney *notice* not to have received it from the maker thereof : *Held*, also, that where a bill is filed against four defendants, and there is no demurrer thereto at the proper time for *misjoinder* of parties, and upon the trial of the cause, some of the defendants introduce evidence, and other defendants do not, the complainant's solicitor is entitled to conclude the argument before the jury.

Where a bill is filed by infant *cestui que trusts* by their *next friend* for an amount of the trust property against the trustee, and others, it is error for the Court to charge the jury, "that the complainants ought not to recover, because such recovery would be no protection to any of the defendants, and that they would be liable to be again harrassed with suits by other next friends, by the lawful trustee, or by the minors after Mrs. King's death:" *Held*, also, that it was error in the Court, in view of the facts to charge the jury, "Nor is there any ground, or reason, for a recovery against him (Gartrell) under the law, and evidence in this case"—the jury should be left free to decide upon the evidence submitted.

It is also error for the Court in its charge to the jury, to say to them "that he was surprised, that no demurrer had been filed to the bill, or some motion made to dismiss it; but as no one had made any such motion, he would go on and charge them the law in the case," such remarks being calculated to prejudice the plaintiff's case in the minds of the jury.

King *vs.* King, *et al.*

Equity. ·Motion for new trial. Decided by Judge UNDER-
WOOD.	Floyd Superior Court.	July Term, 1867.

Mrs. King, by bill in Equity, made the following aver-
ments.	She married Joshua King in 1849; two daughters,
issue of the· marriage, are living, aged respectively sixteen
and twelve years; King took into possession $8,000.00 worth
of property descending to her from her father and sister.
They entered into a deed of separation, by which King was.
to hold $4,300.00 as trustee for her and the said daughters,
paying to her semi-annually the interest thereon for her sup-
port, and giving the *corpus* to said daughters at her death,
immediately separated, and have so continued.	(She sued her
husband for a divorce *a vinculo matrimonii* to January Term,
1861, of Floyd Superior Court, and got final judgment there-
for in July, 1863.)	King failing to pay the *interest,* she
employed Daniel R. Mitchell, Esq., to sue for *it only;*
Mitchell had Wm. D. Franklin appointed trustee for her, and
in his name sued on said obligation, and got a judgment for the
full amount in July, 1863.	When she heard of this suit, she
told Mitchell and Franklin each not to receive any part of
this judgment in Confederate currency; but six months
thereafter Mitchell and Franklin combined to defraud her
and her daughters, Mitchell advised her and Franklin, that
they were bound to take said currency in payment, saying
that if they refused, the military authorities of the Confed-
erate States would compel them to take it.	Having confidence
in Mitchell, and frightened by said remark, she consented
that Franklin should receive the currency in payment of the
judgment, which was justly for par funds, and this he did on
the first of January, 1864, when said currency was worth
only five cents in the dollar.	Meanwhile, and by the 30th
of January, 1864, Henry A. Gartrell had been appointed
trustee in *lieu* of Franklin, and to him Franklin paid over
said currency.	Gartrell used the currency in private specu-
lations, and refuses to account therefor.	She admits that she
received a part of the interest and some other payments in
said currency, and some in United States currency.	She says

she knows not how Franklin or Gartrell became trustee, and cannot ascertain, except by an appeal to their consciences. She claims that the Confederate money should discharge said debt only *pro tanto* according to its value; that Gartrell should pay the value of what he got when he took it; and that Franklin, Mitchell and King should each and all of them, be held liable to make good the balance.    Her prayer is for discovery account and settlement.

The defendants answered the bill.

Mitchell answered that she employed him to sue for said divorce, and she obtained it in 1863; that the main difficulty was an agreeable division of the property, the parties were bitter towards each other, he thought it best, and advised that this should be arranged out of Court, and on the 9th of February, 1861, pending said divorce case, he drew up a proposition, in substance, as follows :· Franklin should be her trustee, or should he refuse to be, some person, (other than Dr. John L. Hughes and Henry Dobson,) should act; King should convey $4,300.00 worth of property, to be agreed on by him and the trustee, or if they failed to agree as to the property and price King would secure the payment of that sum in cash to the trustee, with interest from date, or from the time he should fail to pay the $25.00 allowed by Judge Hammond's order at the last term; the property or money to vest in the trustee for her during life, remainder to her three daughters by King; she to have absolutely for her use and support the rents, issues and profits or interest; King to maintain and educate the children, allowing her to keep the youngest till seven years old, he supporting and clothing her and paying to her trustee for her use $100.00 *per annum*, and King to pay the entire costs and $100.00 to Mitchell as his fee for professional services for Mrs. King, (this was signed by Mrs. King, and Mitchell as her Attorney.) King in writing, accepted the proposition, and Franklin, on the 11th of February, 1861, accepted the trust.    Mitchell did not then or yet know anything about said deed of separation He did not know Franklin at the time; she proposed her brother, Hughes; King objected, saying he would not sign

the agreement if Hughes or Dobson had anything to do with it. Mitchell told Mrs. King of this, and she then selected her cousin, Wm. D. Franklin, of Gordon county, and this was the first Mitchell had heard of Franklin in connection with the matter; Franklin was not present then, or when King accepted, and is not believed to have heard of it till after the acceptance by King. She said she would see Franklin and get him to accept the trust, and Franklin came to Mitchell's office and did so, saying he was gratified that this matter as to the property was adjusted.

Under Mitchell's advice Franklin proceeded to close up the transaction; he failed to agree with King as to the value of the property offered, and determined to take the money, and took the notes herein mentioned. Mitchell had nothing farther to do with this till Franklin brought him a writing from King to Franklin, stating that because Mrs. King had failed to comply "with the agreement and understanding had at the time," and had taken possession of much of the property which it was understood should be turned over to her in *lieu* of said note, and the balance was ready to be turned over, the consideration of his note had failed, and he would pay neither the principal nor interest on it. This writing was dated the 16th of February, 1862.

King told Mitchell that he had made no agreement to take property for the note, and if Mrs. King had done so, it was without his authority, and said he knew no remedy but to sue on the note, and asking Mitchell, was advised that he thought it best to sue, and thus settle the matter. Franklin then delivered Mitchell the note for $4,300.00, dated 1st of March, 1861, and due twelve months after date, and the notes for interest for collection, he sued to July term, 1862, and got judgment at July term, 1863. Before judgment was taken King asked Mitchell if he would take Confederate money, he said he would unless ordered not to, that he was taking it for his and his other clients' debts; with this understanding King, by his attorneys, A. R. Wright and Underwood and Smith, confessed judgment.

On the 10th of July, 1863, Mitchell as such attorney,

took from King the amount due on the judgments, in such currency, most of it being in seven-thirty notes, and in a few days wrote Franklin, informing him of it, got no answer, wrote him again, and on the 8th of October, 1863, Franklin came to Mitchell's office, and as such trustee receipted him for $4,534.00, the full amount, less the commission for collection, and this without objection, as Mitchell recollects. Mitchell took Confederate money, nearly $100.00, after that, and up to the surrender of Gen. Lee, honestly believing that the cause of the South was just, and that the Confederate States would succeed and its currency be good.

Mrs. King never instructed him to take only the interest; he knew nothing of her in this suit whatever, Franklin was his client and he never gave such instructions; but she was anxious for Mitchell to pay the Confederate money to her when it was collected, but he would only pay it to Franklin as trustee. All other statements in the bill as to his advice or conduct inconsistent with the foregoing are denied.

Franklin answered that he accepted the trust at the instance of Mrs. King, took the said $4,300.00 note, with Samuel T. King as security, and though he got said notice from the maker he did not sue till notified by the security to sue, and then he did it, not to collect the note, but to keep the security from being discharged, and had no intention of taking Confederate money for the claim till he did take it from Mitchell. On the 8th of October, 1863, he paid complainant $234.00, the interest, and kept the balance separate from his funds, rolled up in his trunk, till on the 17th of March, 1864, he paid it over to said Gartrell as trustee. Nor did he take the money from Mitchell till Mrs. King instructed him to do so, though he thinks she did take it under an idea that she was compelled to do so. He was not appointed trustee by order of Court, gave no bond, got no order to receive the currency, and without any order of Court procured by himself authorizing him, he paid it to Gartrell as trustee, by Mrs. King's request. He acted in the premises for accommodation, without commissions or reward, and in good faith.

King answered that the property coming to Mrs. King
15

by inheritance was worth only $3,000.00, and gave a statement of the items (including three slaves,) making a sum total of $3,007.60⅔; that on the 21st of July, 1860, he and his wife entered into written articles of separation, by which each was to allow the other to get a divorce by offering no defense. In consideration of this he was to settle absolutely on her $3,000.00, to be paid when divorces *a vinculo matrimonii* were granted to both, and to settle $3,000.00 on their three children, in trust, absolutely, and if all of them died before their mother, then she was to have half of the sum; she was to keep Hertha, the youngest child, and he to keep the other two, and he to maintain all of them till said divorces were granted. He was to pay Judge Wright and D. S. Printup $100.00 each for the settlement and getting the divorces, and after the divorces King was to pay Mrs. King the interest on one-third of the childrens' fund ($70.00) annually, for the support of Hertha, and King was to be the trustee, and give bond and security accordingly.

This was signed and sealed by him and her on the 21st of July, 1860. Afterwards, this was changed by the contract mentioned in Mitchell's answer, and Franklin made trustee by that contract. Copies of both were exhibited as parts of hi answer.

He was sued, and paid the judgments, principal and interest, knowing nothing about their instructions to their attorney; the currency paid by him was raised by a sacrifice of property really worth in United States currency the face of the judgments. He acted in good faith,—has his two daughters abroad at an excellent school, and intends to educate and maintain them in the best style.

Gartrell answered that because Mrs. King owed him $200.00, which he wished to secure, and especially because of her importunity, in begging him to do so, he became the trustee. He was appointed by Judge Featherstone, at Chambers, on the 5th of March, 1864, and gave bond and security for his faithful performance of the trust. He took said currency from Franklin—paid Mrs. King $200.00 by her note dated 30th of January, 1863, and due one day thereafter; $70.00

by her due bill dated the 2d of March, 1864, and $35.00 in United States currency, in 1866.

He says that he is chargeable with only the value of what he got; that he is still the trustee and ready to settle. He exhibited a copy of the petition by her attorney Mitchell and herself reciting the facts, asking for the removal of Franklin and the appointment of Gartrell, and the order passed pursuant to the prayer.

All matters in the bill, not inconsistent with the answers of each of the defendants, are admitted or ignored by each of them.

Besides the answers, there was testimony by interrogations and by witnesses from the stand; not affecting the answers, however, in any important particulars.

Complainant's solicitors read Franklin's answers to interrogations, and when he was stating that he sued "only to keep the security from being released," defendant's solicitor moved to exclude this reason, and the Court did so. He said Mrs. King was present when he took the currency from Mitchell, and took it because of her destitution, etc.

MRS. KING testified that her said inheritance was worth $5,000.00 *par*—that she told Mitchell, often, not to allow King a divorce without $10,000.00 settled on her, and that she told him not to collect any of said note but the interest. These statements were corroborated by her mother, Mrs. Dupriest. They introduced a table showing the value of Confederate currency at different dates, and closed.

The defendants, King, Franklin and Gartrell, read the exhibits mentioned in their answers, and the notes and receipts mentioned by Gartrell, to show payments by him—examined Gartrell, who said he used the money to buy cavalry horses, but was ready to account when any authorized person called on him, and showed by Judge Underwood that he, having advised King that a payment in Confederate currency would discharge the judgments, confessed the judgments for King, and, at his request, acted without fee, but as the friend of Printup, who was absent.

Mitchell introduced no evidence.

In rebuttal, one of complainant's solicitors testified that he called on Gartrell for a settlement, and that he appeared willing to settle, but had not done so.

The complainant's solicitors claimed the right to begin and conclude the argument. But the Court held that Mitchell was entitled to open and conclude, and ordered that Mitchell's solicitor should open the argument, that Gartrell's solicitor should speak next, then King's, then complainant's, and then Mitchell's should conclude, and thus the argument was had. The Court prefaced his charge by the remark that he was surprised that no demurrer had been filed to the bill, nor any motion made to dismiss it, but as it had not been done, he would give them the law of the case.

He then charged that if King was sued to judgment on said trust claim and paid the amount of the judgments to the attorney for the trustee in Confederate Treasury notes, the then currency, and the attorney received them in payment of them in payment of the judgments, King was discharged; that if Franklin received said currency from Mitchell, that ratified his action (unless Franklin was forced, by some vigilance committee of which Mitchell was a part, or by military force, to receive it;) that, under the act of the 18th of April, 1863, it was lawful for Mitchell to receive such currency at par in payment of the judgments and his receipts was a discharge of the debt against Mitchell even without the statute; that even if Franklin was guilty of a breach of trust in so receiving the currency at par, and it was known to Mitchell and King to be such breach when King paid and Mitchell took such currency, yet Mitchell and King were not affected by such breach unless they intended thereby to injure or destroy the trust fund; that, if all the defendants acted in good faith, and King paid the currency to Mitchell, Mitchell to Franklin and Franklin to Gartrell and he so used the fund as not to damage the estate, and it was lost by the result of the war, complainant ought not to recover. The Court also charged the jury "that complainant ought not to recover, because such recovery would be no protection to any of the defendants, and that they would be liable to be again

King *vs.* King, *et al.*

harassed with suits by other next friends, by the lawful trustee, or by the minors, after Mrs. King's death." The Court further charged the jury in relation to the liability of Gartrell—among other things, "Nor is there any ground or reason for a recovery against him under the law and evidence in this case." He was requested by complainant's solicitors, to charge that, as attorney, Mitchell could not lawfully take depreciated currency in payment of said judgments, and King's payment was a discharge only *pro tanto,* both as to Mitchell and King; that Franklin could not, by taking such currency, so ratify Mitchell's act as to bar the *cestui que trusts;* that if Franklin took it, relying on Mitchell's advice, that he was compelled to do so, it was no ratification; that it was incumbent on Mitchell to show that Franklin knew all the facts and knew he could refuse to receive the same before his receipt of it, amounted to a ratification; that an attorney or trustee could receive nothing but par funds in discharge of such claims; that Gartrell is liable for, and, in this suit, should be made to respond for the value of the currency received by him and interest thereon, and that no ratification by Mrs. King could affect the right of the minors to recover the *corpus.* The Court refused the requests further than as they were embodied in said charge.

There was no order appointing guardians *ad litem* for the minors, nor other thing showing that they were parties in the case.

The verdict was for the defendants.

A motion for a new trial was made, averring that the Court erred.

1st. In prescribing the order of argument as he did.

2d. In his said prefatory remark to the jury.

3d and 4th. In his charge to Franklin's right so receive such currency.

5th. In his charge as to ratification.

6th. In charging that a judgment in this cause would not bar a recovery by the minor *cestui que trusts.*

7th. In charging as he did as to a breach of trust by Franklin known at the time to King and Mitchell.

8th. In ruling out Franklin's assigned reason for suing King.

9th, 10th, 11th, 12th and 13th. In refusing to charge as requested as to the other defendants; and

14th and 15th. In refusing to charge as requested, and in charging as he did as to Gartrell's liability.

16th, 17th and 18th. In charging that King, Franklin and Mitchell were discharged, if they acted in good faith.

19th. In charging that the loss of the fund by the war barred a recovery; and

20th. Because the verdict was contrary to the weight of the evidence.

The Court refused a new trial, and the twenty errors alleged in said motion are brought here for review.

WRIGHT & BROYLES, for plaintiff in error.

HARVEY & SCOTT, PRINTUP & FOUCHE, W. AKIN, for defendants in error.

WARNER, C. J.

The record in this case discloses the fact that Mrs. Mary Jane King for herself and in behalf of her two minor children Beatrice and Ada, filed her bill in Floyd Superior Court in June 1866, against Joshua King, Daniel R. Mitchell, Wm. Franklin and Henry A. Gartrell, praying for a discovery and account, in relation to a certain promissory note executed by King for the sum of $4,300.00, which note, it is alleged, was *trust* property, executed for the benefit of Mrs. King and her two minor children, at or about the time of her separation from her husband; that the consideration of said note was the amount of property she was entitled to receive out of her husband's estate, as agreed on by the parties at the time of their separation. It also appears that Franklin was appointed trustee for Mrs. King, and, as such trustee, placed the note for $4,300.00 in the hands of Daniel R. Mitchell, an attorney at law, for collection; that suit was instituted thereon in the name of Franklin, the trustee, and judgment obtained against

King *vs.* King, *et al.*

King, the maker, for principal and interest due up to the time the judgment was rendered. On the 10th day of July, 1863, Mitchell, as the attorney of Franklin, the trustee, received from King, the defendant, the amount of principal and interest due on said judgment in Confederate Treasury notes, in full payment and satisfaction thereof. On the 4th day of October, 1863, Mitchell, the attorney, paid over the Confederate money to his client, Franklin, and took his receipt therefor, without objection on the part of Franklin, so far as the record shows. Afterwards, on the 5th March, 1864, Franklin was removed as trustee, and Henry A. Gartrell was appointed trustee for Mrs. King, and the trust property aforesaid was turned over to him. The bill alleges a fraudulent combination between the parties, especially between Mitchell and King, to pay off this trust debt in Confederate money, and the main object of the bill is, to set aside the payments so made by King to Mitchell, the attorney, as well as the payment made by Mitchell, the attorney, to his client, Franklin, the trustee, and to have the amount of this trust debt paid in good money.

As we feel constrained to order a new trial in this case for errors which we find in the record, committed on the former trial, we shall express no opinion upon the facts involved in it, but simply state the general rules of the law which are applicable to this particular class of cases.

The first ground of error assigned to the judgment of the Court below, which we will now consider, is that which relates to the order of the argument of counsel before the jury. The Court below, ruled that, as Mitchell, one of the defendants, had not introduced any evidence upon the trial of the cause, his counsel should be entitled to conclude the argument before the jury, although some of the other defendants had introduced evidence upon the trial. It is a well settled rule of practice in our courts of law upon the trial of cases before the jury, that, if any of the defendants introduce evidence upon the trial, the plaintiff is entitled to open and conclude the argument. By the 4144 section of the Revised Code, the same rule of practice is to be observed in the trial of

equity causes, as in trials at law, in the conduct of the cause before the jury, except that, when a complainant relies solely on the defendant's answer, he shall be entitled to open and conclude the cause. In this cause there were four defendants sued together *jointly*—there was no demurrer for *misjoinder* of parties at the proper time,—they elected to go to trial as *joint* defendants, and *jointly* resist the complainant's recovery. The case stood before the Court just like any other case, with the complainant on one hand and the defendants on the other. Some of the defendants introduced evidence to resist the complainant's right to recover a verdict. The legal presumption is that, being *jointly* sued, and *jointly* defending, they had a common interest in the result of the verdict, and those who introduced *no evidence*, were as much bound by the rule of the Court, as those *who did.* The question for the Court in all such cases, is, was there *any evidence* introduced for the *defence*, against the complainant's demand? If there was, then the complainant's solicitor is entitled to open and conclude the argument before the jury.

The next ground of error assigned in the record which we will now consider, is that relating to the charge of the Court to the jury, as to the right of the complainant to recover against the defendants in this cause, in the name of the complainant, who sues for herself and her two minor children. The Court below charged the jury, that "complainants ought not to recover, because such recovery would be *no protection to any of the defendants*, and that they would be liable to be again harassed with suits by other next friends, by the lawful trustee, or by the minors after Mrs. King's death." If the proposition asserted by the Court, in its charge to the jury upon this branch of the case, be a sound legal proposition applicable to the state of facts then before it, the verdict ought to have been for the defendants, irrespective of the *merits* of the cause established by the evidence upon the trial. No matter what may have been the *merits* of the complainant's cause under the evidence, still, under the charge of the Court she would not be entitled to recover a verdict against the defendants, if that verdict, or decree rendered

King *vs.* King, *et al.*

upon it, would be *no protection* to them from subsequent suits for the same cause of action.   But we do not think that the proposition asserted by the Court in its charge, as applicable to the facts contained in this record, was a *sound legal proposition.*   This bill was filed by the complainant, in behalf of herself and her two minor children.   It is true she does not sue as their guardian, nor does she style herself their "next friend" in so many words—but that is the *legal effect of the suit*—she sues in behalf of herself and two minor children, and if she had *formally* stated she was their "next friend" it would not, in the view which a Court of Equity takes of such matters, have enlarged, or restricted her *status* before the Court.   The interest of herself, and the interest of her two minor children, in the subject matter of the suit, is distinctly stated in the bill, which was before the Court.   To the extent of her own individual interest, she was *sui juris* at least.   But under the provisions of our Code, if this suit had been instituted in behalf of the infants alone, and a verdict had in their favor against the defendants, it would not have been *void*, but the defect of not sueing by their guardian, or next friend, would have been *cured by the verdict.* The 3194 section of the Revised Code declares that, " A suit commenced and prosecuted by an infant alone is not void, and although the suit is defective in wanting a guardian or next friend, the defect is amendable before verdict, and *cured by verdict.*"   By the 4114, 4119 and 4120 sections of the Revised Code, it is further declared that, " No mere formality, or *omission of a formality,* shall vitiate, or delay a proceeding in equity, but the same liberality as to amendment, shall be allowed therein, as in a proceeding at law.   Any person who cannot sue at law may complain in equity, and every person who is remediless elsewhere, may claim the protection and assistance of a Court of Equity, to enforce any right recognized by the law.   Persons not *sui juris* may appear either by guardian, or next friend, or guardian *ad litem* appointed by the Court.   In the latter two cases, the Court may require such bond, as shall protect the interest of the person under disability."   All these provisions of the Code

look to the protection of the *infant*, rather than to the rights of the defendants. In our judgment if there had been a recovery in this case in favor of the complainant in the bill against the defendants, such recovery would have protected them from any other suit by the parties therein, for the same subject matter, and that they would not be liable to be again harassed with suits by other next friends, or by the lawful trustee, or by the infant minors after Mrs. King's death, so far as the *same subject matter of this suit is concerned.* It is, however, the duty of the Court, in all cases where parties are before it who are not *sui juris*, to see to it, that *their* interests are properly protected.

The charge of the Court as to the liability of Gartrell, one of the defendants, is also excepted to, and assigned as error upon the trial of this cause. The Court charged the jury, in connection with other matters, in the following words, as disclosed by the record, " Nor is there any ground, or reason, for a recovery against him, under the law, and *evidence* in this case." By the 3143 section of the Revised Code, it is declared to be error, for any Judge of the Superior Courts in this State, in any case, whether civil, or criminal, or in equity, to express, or *intimate*, in his charge to the jury, what has, or has not been proved. Although the Court did not expressly state what had, or had not been proved, still, we think, that there was a *very strong intimation* by the Court, that *the evidence* in this case was not sufficient to authorize a verdict against that defendant. It is the exclusive province of the jury to judge of the effect and weight of the evidence submitted to them, and they should be left free to decide upon it, without any expression or *intimation* upon the part of the Court, as to whether it is sufficient or not to authorize a recovery. The Court is to give them in charge the law applicable to *the facts proved*, and the jury are to find what has, or has not been proved by the evidence. The effect of the charge of the Court in this case was to withdraw from the consideration of the jury the evidence in relation to Gartrell's liability, to account to the complainant for any portion of the trust property in his hands.

King *vs.* King, *et al.*

An exception was taken to the remarks of the Court below in submitting the cause to the jury, which has also been assigned as error. The record shows that the Court remarked to the jury, " that he was surprised that no demurrer had been filed to the bill, or some motion made to dismiss it; but as no one had made any such motion, he would go on and charge them the law in the case." We think these general remarks of the Court improper at all times, and especially when calculated to *prejudice* the plaintiff's case in the minds of the jury. The natural inference from these remarks of the Court upon the minds of the jury, would be that there was no *merit* in complainant's case, that it ought to be dismissed out of Court, and she had no business there troubling the Court and jury with the trial of it. Such may or may not have been the impressions made upon their minds. If *no remarks* had been made by the Court upon the subject at all, then it is quite certain that *no impressions* would have been made of that character.

There is another portion of the charge of the Court to the jury, which we also think was erroneous, in view of the facts of this case, and that is in relation to the trustee Franklin being " forced to receive Confederate money by some vigilance committee of which Mitchell was a part, or by military force." We have been unable to find *any evidence* in the record, in regard to any vigilance committee using force, or as to any military force being used, which would authorize the charge of the Court as given to the jury upon that subject. The charge of the Court should always be based upon the facts as *proved*, and not upon an *assumed* state of facts which have no existence under *the evidence* in the case.

There were many requests made in writing by the complainant's counsel for the Court to charge the jury, which were argumentative and otherwise objectionable in view of the facts of this case, and in our judgment they were properly refused by the Court, except the one as to the liability of the defendant, Gartrell. In our judgment, he is liable to account for the value of the trust fund which he received

and converted to his own use, *at the time of such conversion,* with interest on such value.

The liability of the defendants to pay the amount of the note in good money now, will depend upon the *bona fides* of the parties who paid and received it. If there was a *fraudulent collusion* between King and Mitchell and Franklin, the trustee, or between King and Mitchell, for the purpose of paying off this trust debt in Confederate money, for the purpose of injuring and defrauding the *cestui que trusts* of the same, or any part thereof, then the payment of this trust debt in Confederate treasury notes ought to be set aside. But if, on the other hand, the judgment obtained against King by the trustee, was paid by him in *good faith* in Confederate treasury notes, the common currency of the country at that time, to Mitchell, the attorney for the trustee, and by Mitchell the attorney was paid over to Franklin the trustee, in *good faith,* who received the same without objection, then. King will be protected in the payment of the judgment to Mitchell, and Mitchell will be protected in the payment thereof to his client, Franklin, the trustee.

Trustees having the possession of trust property are bound to *ordinary diligence* in the preservation and protection of the same. Revised Code, section 2300. If Franklin, the trustee, did not wish or desire to receive Confederate money in payment of his judgment against King, then he ought to have *notified* Mitchell his attorney, not to have received it. Whether Franklin, the trustee, used *ordinary diligence* under the circumstances, for the protection of the trust property, is a question for the jury to decide from the evidence, when this cause shall be submitted for another hearing.

Let the judgment of the Court below be reversed and a new trial granted.