23217. AMERICAN AGRICULTURAL CHEMICAL CORPORATION *v.* JORDAN *et al.*

DECIDED FEBRUARY 12, 1934.

*R. D. Smith, Colquitt, Parker, Troutman & Arkwright,* for plaintiff in error.

*C. A. Christian, Robert R. Forrester,* contra.

MacINTYRE, J.   J. F. Jordan brought an action for damages in the superior court of Ben Hill County against C. J. Knight, a resident of said county, and the American Agricultural Chemical Company, a nonresident corporation of the State of Georgia. For the sake of brevity, the nonresident defendant will oftentimes be hereinafter referred to as the Chemical Company. The question for determination is whether or not the judge of the trial court erred in denying the Chemical Company's petition to remove the case to the Federal court because of alleged separable controversies.

For the purposes of this decision, the following is a sufficient statement, by paragraph, of the substance of the case made by the petition:

4. On March 18, 1931, plaintiff purchased certain fertilizers from the Chemical Company through its agent, C. J. Knight, giving for the same his unsecured promissory notes in the aggregate sum of $3870.17.

5. On May 6, 1931, at the request of said Knight, the salesman and representative of the Chemical Company, the plaintiff, without consideration, executed to said company a bill of sale to certain crops, said bill of sale including no live stock whatsoever.

6. After said notes became due, plaintiff deposited with the Chemical Company fifty-five bales of cotton. Said company claims to have sold said cotton on May 3, 1932, for the net sum of $1277.40, but, if it did so, plaintiff was not notified of said sale until several months thereafter.

7. On May 31, 1932, the Chemical Company filed a suit against plaintiff in Tift superior court for $7740.30, double the amount of plaintiff's indebtedness, without giving plaintiff credit for the proceeds of the cotton sold, and in said suit asked that a receiver be appointed to take charge of "all of the crops and other property of your petitioner."

8. Plaintiff at no time executed to the Chemical Company a mortgage or bill of sale on the live stock described in the bill of sale dated May 6, 1931.

9. "Thereafter the defendant company, by and through its agent aforesaid, the defendant C. J. Knight, maliciously, fraudulently, and with intent to defraud your petitioner and to injure him, did forge and utter a certain mortgage or bill of sale which purports to have been executed by your petitioner and dated May 21, 1931, which bill of sale contains a description of 27 head of mules."

10. On October 14, 1932, the Chemical Company, by and through its attorney at law, R. D. Smith, foreclosed said "fraudulent mortgage" in Tift superior court, and delivered the execution issued thereon to a deputy sheriff with instructions to levy on all the property described therein.

11. In accordance with the aforesaid instructions, said deputy sheriff seized "all of the property, consisting of live stock, farm implements, farm produce, and plow gear."

12. Plaintiff had been farming for forty years, and could have continued to do so, "had all of his property not been wilfully and maliciously sacrificed as a result of the foreclosure of the forged mortgage." Plaintiff was indebted to the Bank of Tifton for a large sum of money secured by a bill of sale to a large part of the property alleged to have been fraudulently inserted by forgery of petitioner's signature in the bill of sale to the defendant, and was also indebted to the Atlanta Joint Stock Land Bank; but plaintiff had made arrangements with said creditors to extend said indebtednesses for another year upon the compliance by plaintiff with certain conditions.

13. Plaintiff would have complied with said conditions to the satisfaction of said creditors, "had it not been for the malicious foreclosure of the forged mortgage," which directly resulted in the foreclosure of the Bank of Tifton's mortgage.

14. "By reason of the foreclosure of the defendant's forged mortgage, all of his property was levied upon and sold at a sheriff's sale before the court-house doors of Tift county, Georgia, on the first Tuesday in November, 1932, for less than half of its value . . , and, as a result, . . his credit has been ruined, his property sold, and petitioner, in his old age, deprived of his only means of livelihood,—all to his damage in the sum of $10,000."

Exhibit "A" of the petition sets forth a bill of sale to certain crops and twenty-six head of mules, dated May 6, 1931, signed by plaintiff and witnessed by Knight, together with a paper attached

setting forth a description of twenty-seven mules, reciting that it is made a part of the bill of sale of May 6, 1932, signed by plaintiff and witnessed by Knight.

The right of removal to the Federal court, under the acts of Congress of March 3, 1887, and August 13, 1888, depends upon the state of the pleadings and the record at the time of the application for removal. If, upon the face of the declaration,—the only pleadings filed in case,—the action is joint, for the purpose of determining the right of removal, the cause of action must be deemed to be joint. "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint." *So. Ry. Co.* v. *Miller,* 1 *Ga. App.* 616 (3) (57 S. E. 1090). To sustain this ruling, the Court of Appeals cites the case of Alabama Great So. Ry. Co. *v.* Thompson, 200 U. S. 206 (26 Sup. Ct. 161).

"Several persons acting independently but causing together a single injury are joint tort-feasors, and may be sued either jointly or severally." *Mashburn* v. *Dannenberg Co.,* 117 *Ga.* 567, 580 (44 S. E. 97). The general rule is stated in *Brooks* v. *Ashburn,* 9 *Ga.,* 297 (3), in this language: "Where an immediate act is done by the co-operation, or the *joint* act of two or more persons, they are all trespassers, and may be sued jointly or severally, and any one of them is liable for the injury done by all. To render one man liable, in trespass, for the acts of others, it must appear either that they acted in *concert,* or that the act of the party sought to be charged, ordinarily and naturally produced the acts of the others." This general rule was quoted and applied in the *Mashburn* case, and in the more recent case of *Mass. Cotton Mills* v. *Hawkins,* 164 *Ga.* 594, 599 (139 S. E. 52). "In the case of a tort which gives rise to a joint and several liability, the plaintiff has an absolute right to elect and to sue the tort-feasors jointly if he sees fit, no matter what his motive [Ill. Cent. R. Co. *v.* Sheegog, 215 U. S. 308, 316, 30 Sup. Ct. 101, 54 L. ed. 208], and there is no separable controversy in such a joint suit." 23 R. C. L. 684, § 79. In connection with the conclusion reached in the last clause of the foregoing quotation, see Pirie *v.* Tvedt, 115 U. S. 41, 43 (5 Sup. Ct. 1034, 1161, 29 L. ed. 331) ; Chesapeake & Ohio Ry. Co. *v.* Dixon, 179 U. S. 131 (21 Sup. Ct. 67, 45 L. ed. 121) ; Lynes *v.* Standard Oil Co., 300 Fed. 812 (1).

The wrong complained of is a positive, wilful tort. It began with

the forgery of the bill of sale, and ended with the sale that resulted in the injury. It is true that Knight had no part in the sale, but, to our minds, the forgery, which was concurrently participated in by both defendants, was the real cause of the injury. Acting for his principal, the Chemical Company, Knight sold the fertilizers, took the notes therefor, procured the bill of sale of May 6, 1931, and, finally, forged the paper, the foreclosure of which caused the injury. The forged paper was taken for no other purpose than to secure the notes, and the ordinary and natural result of taking such a paper is the sale of the property conveyed to secure the debt. Knight prepared the paper and must have known precisely what it was. The Chemical Company had the exclusive right to say when, how, and by whom the paper should be foreclosed. It was perfectly natural for the Chemical Company to have an attorney at law prepare the proper papers and bring the property to sale, rather than have an ordinary salesman perform this duty. The allegations as to the failure of the Chemical Company to credit the plaintiff with the proceeds of the sale of his cotton, and as to the receivership proceedings, appear to be incidental. We hold that the trial judge properly denied the petition for the removal of the case to the Federal court.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

GUERRY, J., concurring specially. The forgery by itself did not cause the damage. The foreclosure was not injurious except for the forgery. The plaintiff has elected to sue for the tort produced by the concurrent acts which produced the damage. The plaintiff in this case is not suing for damages from forgery and an illegal levy independent of each other, but is suing for a tort made up and caused by the two acts. The petition therefore did not set up separable controversies.

BROYLES, C. J., dissenting. I think that the petition sets up a separable controversy between the plaintiff and the nonresident defendant by the allegation that such defendant, acting through its attorney at law, R. D. Smith, wrongfully foreclosed a forged mortgage on certain live stock of the plaintiff. That wrongful foreclosure caused the damage sued for, and the petition does not allege that Knight, the resident defendant, participated in the foreclosure, or advised it or knew anything about it. In my opinion the judge erred in overruling the motion for removal.