30988. JOYCE, next friend, *et al.* v. CITY OF DALTON *et al.*.
31004. CITY OF DALTON *et al.* v. JOYCE, next friend, *et al..*

DECIDED OCTOBER 17, 1945. REHEARING DENIED NOVEMBER 27, 1945.

*Stafford Brooke, R. Carter Pittman,* for Joyce *et al.*
*C. H. Dalton, D. W. Mitchell,* for City of Dalton *et al.*
PARKER, J. This is the third appearance of one or both of.

210

these cases in this court. See *City of Dalton* v. *Joyce, 70 Ga. App.* 557 (29 S. E. 2d, 112), where the facts are fully stated and where it was held that the petition set out a cause of action; and *City of Dalton* v. *Anderson,* and *Joyce* v. *Dalton, 72 Ga. App.* 109 (33 S. E. 2d, 115), in which the trial court was reversed because of errors in the charge. The last trial resulted in a verdict for the plaintiffs against the City of Dalton, but not against Mrs. Anderson. The plaintiffs and the City of Dalton filed separate motions for new trial, and the exceptions are to the overruling of those motions. The cases will be considered together as several of the assignments of error in both cases are alike.

■ The plaintiff in error in each case complains because the court charged the jury that they might find for the plaintiff "against said defendants, or either or both of them whose negligence you find to be the proximate cause of such death, if either or both." The objections to this charge are: that it was not authorized or applicable to the issues, in that the City of Dalton could not be held liable for failing to keep its streets and sidewalks in a reasonably safe condition for use by the public, as required by law, unless the jury also found that Mrs. Anderson was negligent in maintaining the shed which extended over the sidewalk in a defective condition; and that a verdict either for or against both defendants was demanded under the law and evidence.

Assuming but not deciding that the degree of care required of each defendant was the same, still the jury was authorized to find against one defendant and in favor of the other, if the evidence justified such finding. "Several persons acting independently, but causing together a single injury are joint tort-feasors, and may be sued either jointly or severally." *American Agricultural Corp.* v. *Jordan,* 48 *Ga. App.* 493 (173 S. E. 488); *Southeastern Greyhound Lines* v. *Estes,* 68 *Ga. App.* 248 (2) (22 S. E. 2d, 679). "A plaintiff can sue one or more than one, or he can sue all, of several joint tort-feasors in the same action, and the jury, by its verdict, can bind one and relieve another, as the evidence may authorize." *Finley.* v. *Southern Ry. Co.,* 5 *Ga. App.* 722 (3) (64 S. E. 312); *Council* v. *Nunn,* 41 *Ga. App.* 407, 411 (153 S. E. 234). "There may, in an action against joint tort-feasors, be a lawful recovery against one only of them." *Hollingsworth* v. *Howard,* 113 *Ga.* 1099(2) (39 S. E. 465).

The plaintiff's evidence showed that employees of the City of Dalton had gone upon the shed a number of times, for the purpose of putting up and taking down Christmas lights, for several years before it fell, the last time being in January, 1942. Testimony for the plaintiffs as well as evidence for Mrs. Anderson showed that she was not consulted by the city or its employees about going upon the shed, and that the lights were put up and taken down without her knowledge. While the employees of the city did not see anything that would indicate that the shed was in bad repair, the evidence authorized the inference that in going upon the shed they may have weakened the chains supporting it, thus tending to cause it to fall. It appears that those putting up the lights inspected the shed to determine whether they could safely go upon it, and looked at the chains holding up the shed, and were not able to see anything wrong with the chains or any part of the shed that would render it unsafe. The only other inspections shown by the evidence to have been made by the City of Dalton were made by its building inspector, who didn't go up on the shed but "passed by it (and) looked at it from the ground." The last inspection in this manner was "about a week or ten days" before the shed fell. The City of Dalton offered no evidence in its behalf. The testimony of witnesses for Mrs. Anderson showed that she did not construct the building, but that she acquired it in an alimony settlement with her husband in 1940; that the building was occupied at all times by tenants holding under a lease from her husband; that no one ever reported to Mrs. Anderson, or her daughter who managed her property for her, any defect in the shed. The tenants notified Mrs. Anderson's daughter of a leak in the roof of the main building, and in repairing it the shed was reroofed also. The daughter of Mrs. Anderson testified that from time to time she looked at the building and the shed "in a manner of inspecting it to see how the condition of the property was;" that she had the shed inspected by a carpenter who worked on the main roof of the building; that her last inspection of the shed was a week before it fell; and that she looked at everything about it, and examined the chains by observation, and it appeared to be all right. A contractor who repaired the roof of the shed for Mrs. Anderson, after she had acquired the property, testified that he examined the chains supporting the shed, while on the roof, by taking hold of them and shaking them up and down, and they ap-

peared all right and to be in good shape. A carpenter who repaired the roof of the main building at a later date saw the chains and saw nothing wrong with them, although he made no real inspection of the shed. He testified that, if one of the lap links had been spread much, he would have noticed that, but he didn't notice anything wrong with them.

This court held when these cases were before it on a previous appeal that: "Mrs. Anderson was under a duty to exercise ordinary care in making reasonable inspection of the building, and in repairing the defects discovered or which she by the exercise of ordinary care should have discovered;" and that "The question as to the city was whether it had failed to obey a duty imposed on it by a higher power, the State, to wit, the duty to keep its streets and sidewalks in a reasonably safe condition." See *City of Dalton* v. *Anderson*, and *Joyce* v. *City of Dalton*, supra. The general rule is that a municipality is bound to keep its streets in a reasonably safe condition for travel by the ordinary modes, and will be liable for damages for injuries caused by reason of its failures in this respect, *no matter by what cause* the street may have become defective or unsafe by reason of an obstruction, where the city knew or should have known of the defect or obstruction in time to repair or remove it or give warning of its existence. See *City of Rome* v. *Brinkley*, 54 *Ga. App.* 391 (187 S. E. 911), and citations. "It is a jury question as to what length of time a defect (or an obstruction) in a street must exist, to charge a municipality with knowledge of negligence." *City of Rome* v. *Brooks*, 7 *Ga. App.* 244 (66 S. E. 627). It is a well-settled principle that, except in plain and unmistakable cases, all questions as to diligence and negligence are for the jury to decide. *Southern Ry. Co.* v. *Slaton*, 41 *Ga. App.* 759(3) (154 S. E. 718), and citations. Whether Mrs. Anderson exercised ordinary care in making reasonable inspections of the shed, and in repairing defects which were or should have been discovered, were questions peculiarly for the jury; and whether the City of Dalton failed in its duty to keep its streets and sidewalks reasonably safe for the ordinary methods of travel by the public was likewise a question solely for the jury; and there was evidence which authorized the verdict against the City of Dalton and evidence from which the jury could relieve Mrs. Anderson of liability

by failing to find against her. There is, therefore, no merit in these grounds of the motions for new trials.

■ Both plaintiffs in error complain of three paragraphs in the charge as follows: "I charge you that, if you should find that Mrs. Joyce came to her death as the result of some negligence of the tenant or some illegal use of the building by the tenant or the City of Dalton, whereby the supports of the shed were so weakened as to cause the same to fall, and that by the exercise of ordinary care Mrs. Anderson did not and could not by the exercise of ordinary care have known of the same, then I charge you that Mrs. Anderson would not be liable for such damages as may have resulted therefrom.

"I charge you further that, if the condition or quality of safety of a building is affected by the unauthorized act of another or by the unauthorized creation of a nuisance by another, or by the commission of any acts unauthorized and unknown to the owner whereby the building is put to a purpose or use not intended, and over which acts the owner of the building had no control, and which the owner of the building could not have by the exercise of ordinary care discovered and prevented, the owner of the building would in neither case be liable to others for the injury or damages resulting from such acts, unless it be made to affirmatively appear that the owner knew or should have known by the exercise of ordinary care that such unauthorized acts of others were or would be committed and that thereby her building would be rendered dangerous to others.

"I charge you that, although a notice to a landlord of a defect may charge the landlord with notice of other defects such as might reasonably have been discovered while making the repair, notice of a patent defect, that is an apparent defect, one that is not hidden in the building, and in no way connected with a specific defect which is alleged to have occasioned the injury, may not be taken as constructive notice of such latter defect or as of itself devolving upon the landlord any duty of an inspection such as would reveal such defect. In this connection, I charge you that a notice to the landlord of a leak in the roof of the shed would not of itself constitute notice to the landlord of a latent defect, that is a hidden defect in the supports of the shed wholly disconnected from the leaking roof."

The main objections to the first two paragraphs are: that there was no evidence authorizing these charges; that they expressed an opinion by the court that there was negligence by the tenant, or evidence of some illegal use of the shed by the tenant; and that these charges submitted to the jury an additional defense in favor of Mrs. Anderson which was not authorized by any evidence.

The lease under which the tenants occupied the property provided that they would not "paint any signs on buildings herein leased" without the written consent of the lessor. The uncontradicted evidence showed that one of the tenants had a large sign painted on the front of the building, above the shed, without obtaining Mrs. Anderson's consent, and the jury were authorized to infer that the painters went upon the shed in painting that sign and may have weakened its supports. As shown in the evidence referred to in the first division of this opinion, employees of the City of Dalton went upon the shed many times to place and remove Christmas lights without the knowledge or consent of Mrs. Anderson. The jury were likewise authorized to infer that these employees of the city may have weakened the chains supporting the shed by going upon it as shown by the evidence.

Objection is made to the third paragraph of the charge quoted as being confusing to the jury, and as an intimation by the court that there had been notice to Mrs. Anderson of a defect in the shed, and that the charge amounted to an expression of an opinion by the court that the defect which caused the shed to fall was latent and could not have been discovered by her. There was evidence that Mrs. Anderson repaired the roof of the shed on complaint by her tenants of leaks in the main building; and that carpenters worked on either the main structure or the shed, or both, at different times after she acquired the property and before the shed fell. Our appellate courts have held a number of times that a charge is proper if there is any evidence authorizing it. See *Bowie Martin Inc.* v. *Dews,* 73 *Ga. App.* 73 (35 S. E. 2d, 577), and citations. Under this well-settled rule of law, we think that there was sufficient evidence to justify the charges above set forth.

■ The plaintiffs complain, in special grounds 1 and 2, of charges of the court, as follows: "I charge you, gentlemen, that, if you find from the evidence in this case that an intervening cause over which the defendants had no control, and against which they

could not guard by the exercise of ordinary care, and said cause was the direct and proximate cause of the shed falling at the time and place and under the circumstances, then the defendants would not be liable;" and "I give you in charge section 102-103 of the Code of this State: 'An act of God means an accident produced by physical causes which are irresistible, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. This expression excludes all idea of human agency.' Therefore, if you find from the evidence that the proximate cause of the falling of the shed was due to an act of God such as an inundation, then under those circumstances the defendants would not be liable. I charge you, gentlemen, that, if there was any element of human agency, then the doctrine of act of God would not apply."

The objections to these charges are, that they intimate and express an opinion by the court that there was evidence of an act of God, and that neither the pleadings nor the evidence authorized such charges. The evidence of one witness offered by the plaintiffs showed that there was "a terrible rain and wind, . . . an unusually hard rain," just before the shed fell; and another witness for the plaintiffs testified that, "On the occasion that this canopy (shed) fell down there, we had a rain that afternoon, it was a hard rain, unusually hard, and the wind blowed some, there was considerable wind and an unusually heavy rainfall." Another witness, a sister of the deceased who was walking along the street with the deceased when the shed fell, testified that "a whole lot of water fell down on me" as the shed fell upon the deceased. It has been held that a storm or tornado is an act of God. *Ohio Hardware Mutual Insurance Co.* v. *Sparks,* 57 *Ga. App.* 830, 834 (196 S. E. 921). What degree of rainfall and wind would be necessary to come within the definition of an act of God as contained in the Code, § 102-103, would seem to be a jury question under the facts and circumstances of this case. As was said in *Gobel* v. *L. & N. Ry. Co.,* 187 *Ga.* 243, 251 (200 S. E. 259), approving a statement found in 27 R. C. L. 1107, § 40, "The province of the court is to define in proper instructions what would be regarded in such an instance by the law as an act of God, and leave it to the jury to determine whether the evidence is sufficient to establish that the flood in question was an ordinary flood or was an extraordinary flood so unusual and unprecedented in its nature as to amount in law to an act of God."

The charges objected to defined an act of God in the terms of the statute, as a possible intervening cause over which the defendants had no control, but instructed the jury to determine from the evidence whether or not the proximate cause of the falling of the shed was an act of God. We think that the evidence authorized these charges. Furthermore, the error if any was harmless because the jury did not find that there was an act of God. The verdict for the plaintiffs cannot be set aside at their instance because of an alleged error in the charge, as to the liability of the defendants, which could not have affected the amount recovered. *Gunson* v. *Garrett*, 53 *Ga. App.* 717(3) (186 S. E. 849).

The remaining grounds of the amended motion of the City of Dalton, numbered 5 and 6, relating to certain excerpts from the charge, are not meritorious.

The remaining grounds of the amended motion of the plaintiffs relate to other excerpts from the charge of the court and are without merit.

The evidence authorized the verdict rendered by the jury, which has the approval of the trial judge, and no error of law appears in either of these cases. The court did not err in overruling the motions for new trial.

*Judgment affirmed. Sutton, P. J., concurs.*

FELTON, J., concurring specially. The court charged the jury as follows: "I charge you that there is no presumption of negligence against either defendant, upon the mere fact, if you find such to be a fact, that the plaintiff's deceased wife was killed by defects in the street, shed or awning, but negligence of the defendant in the way and manner alleged in the petition, as heretofore given you in charge must be proved by the plaintiffs before there can be any recovery." In no other part of the charge did the court instruct the jury that, if Mrs. Anderson violated the ordinance of the City of Dalton and such violation was the proximate cause or a contributing cause of the injuries, she would be guilty of negligence per se. In the absence of an exception to the above charge on the question of negligence per se as to Mrs. Anderson, as above indicated, the jury was authorized to find against the city and in favor of Mrs. Anderson under the facts. I do not think that the evidence authorized the charge on an act of God, or accident, but I think that the charge was harmless in view of the jury's finding.