## 69545. KENT et al. v. HENSON.
### (330 SE2d 126)

CARLEY, Judge.

Appellant-plaintiff Mrs. Bernice Kent visited appellee-defendant's dental office and sought treatment for a toothache. A licensed dentist in appellee's employ extracted the tooth. However, Mrs. Kent continued to experience pain. She returned to appellee's office on four separate occasions with complaints of pain in the area where the tooth had been extracted. On each occasion, no X-rays were made and she was prescribed medication for "dry socket." Some two months after the tooth had been pulled, Mrs. Kent visited an oral surgeon. An X-ray was made which, in the opinion of the surgeon, indicated "a foreign body within the body of the right mandible, and in an extraction wound." The foreign body was removed by the surgeon and was found in his opinion to be a filling from a tooth. The surgeon concluded that "there was a high probability that [the filling] came from the tooth that was extracted."

Mrs. Kent and her husband then brought the instant malpractice action against appellee. The complaint alleged numerous acts and omissions as negligence, including the failure to diagnose the foreign body in the tooth socket as the source of Mrs. Kent's post-extraction pain. As the result of appellee's alleged malpractice, Mrs. Kent sought damages for pain and suffering. Mr. Kent sought to recover medical expenses. The case was tried before a jury. At the close of the Kents' evidence, appellee moved for a directed verdict on several grounds. The trial court neither granted nor denied the motion at this time but reserved its ruling. At the close of all of the evidence, appellee again moved for a directed verdict. On this occasion, the trial court granted

the motion as to appellee's "alleged negligence and failure to follow up and take x-rays. . . ." As to the remaining allegations of negligence, however, the trial court again stated that it would "reserve [a] ruling . . . and submit it to the jury." The jury was then charged and retired to deliberate.

The jury returned a general verdict for appellee. Judgment was then entered on the verdict. The judgment also indicated that the trial court was, at that point, granting appellee's motion for directed verdict. The Kents' motion for new trial was denied and they appeal.

1. The Kents first enumerate the grant of directed verdict to appellee on the issue of his failure to make post-extraction X-rays and discover the foreign body in the tooth socket.

"[T]he issue is not whether [a] diagnosis was wrong but whether in making it the doctor used that reasonable degree of care and skill required by [OCGA § 51-1-27], and such as is ordinarily employed by the profession generally. [Cit.] The same degree of care and skill is required in making a diagnosis as is required in treatment. [Cit.] Improper diagnosis is not actionable per se, the issue being whether the physician has used reasonable care and diligence as a professional man. [Cit.]" *Hogan v. Almand*, 131 Ga. App. 225, 228 (205 SE2d 440) (1974).

"The law of this state requires the courts of this state to presume that a physician exercises his skills in the medical and surgical field in a skillful manner. [Cit.] The burden is on the one who denies it to show a lack of due care, skill, and diligence. [Cits.] In such a case the proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses ([Cit.]), and this standard should be that exercised by the medical community generally, not what a particular doctor would do in the circumstances. [Cit.]" *Slack v. Moorhead*, 152 Ga. App. 68, 71 (262 SE2d 186) (1979).

With specific reference to post-extraction X-rays, the only expert witness presented by the Kents was the surgeon who discovered and removed the foreign body. Our review of the transcript demonstrates no testimony by this expert witness to the effect that the failure to make post-extraction X-rays of a patient exhibiting Mrs. Kent's symptoms would violate the applicable standard of care employed by dentists generally. In fact, the witness testified: "If someone presented with those symptoms to me at that juncture, no, I would not take an x-ray. . . ." He also responded "yes" when asked if it would be "a judgment call on the doctor's part" whether to X-ray a patient with Mrs. Kent's symptoms. "A dentist is not an insurer or warrantor that the exercise of his professional judgment will effect a cure of the patient. Nor is he obliged to bring to the exercise of his profession the utmost skill; if he measures up to the qualifications

and applies the reasonable care and skill legally required by the Code, he is not responsible for a mistake of judgment." *Bryan v. Grace*, 63 Ga. App. 373, 379 (11 SE2d 241) (1940).

There being no expert testimony sufficient to authorize a finding that the failure to make X-rays was, under the circumstances presented, a deviation from the applicable standard of professional conduct, the trial court properly granted appellee's motion for a directed verdict as to that issue. *Slack v. Moorhead*, supra.

2. The Kents enumerate as error the giving of a charge on legal accident.

At the conclusion of the jury charge, counsel for the Kents objected "to the giving of the charge which looks to me to be Defendant's Request to Charge Number 8 which deals with the doctrine on accident." We construe this objection as a general assertion that the doctrine of legal accident was not applicable in the case. See *Christiansen v. Robertson*, 237 Ga. 711 (229 SE2d 472) (1976).

"The defense of accident in this state is to be confined to its strict sense as an occurrence which takes place in the *absence of negligence* and for which *no one would be liable*. Unless there is evidence authorizing a finding that the occurrence was an 'accident' as thus defined, a charge on that defense is error. [Cits.]" (Emphasis in original.) *Chadwick v. Miller*, 169 Ga. App. 338, 344 (312 SE2d 835) (1983). The "occurrence" at issue in the instant case was the presence of the foreign substance in the site of Mrs. Kent's extracted tooth. Unlike the circumstances in *Chadwick*, the defense of accident in the instant case was not predicated upon an assertion of the negligence of someone other than appellee. There was expert evidence that the presence of foreign bodies in a tooth socket was a "common" occurrence. Another expert testified that he had observed such an occurrence in his patients on "[n]umerous occasions. . . . Seven hundred-fifty[,] a thousand, whatever." And, although the evidence would have authorized a finding that the filling was from Mrs. Kent's extracted tooth and that the "occurrence" happened during her initial visit to appellee's dental office, the evidence did not demand such a finding. The Kents' own expert acknowledged that the filling could have come from one of Mrs. Kent's other teeth and that it could have entered the site of the extracted tooth at any time between the date that the tooth was pulled and the date that he removed the foreign body. Thus, there was at least some evidence that the "occurrence" at issue was not such that " ' "[s]omebody must have been at fault. . . ." ' [Cit.]" *Chadwick v. Miller*, supra at 342. Accordingly, it was not error to charge on accident. "A charge is proper if there is any evidence authorizing it." *Joyce v. City of Dalton*, 73 Ga. App. 209 (2) (36 SE2d 104) (1945).

The Kents also urge that the accident charge that was given was

an erroneous statement of that legal principle. However, this contention was not raised in the trial court, the sole objection being that the legal principle of accident was not applicable in the case generally. *Christiansen v. Robertson*, supra. "It is well settled that on appeal the ground of the objection stated below 'cannot be enlarged . . . to include grounds not urged before the trial court.' [Cits.]" *Gurin v. Gen. Motors Corp.*, 171 Ga. App. 159, 160 (1) (318 SE2d 830) (1984). " '[R]eview of the charge enumerated as error is limited . . . strictly to the ground of objection stated on the trial. [Cits.]' [Cits.]" *Hurst v. J. P. Colley Contractors*, 167 Ga. App. 56, 58 (306 SE2d 54) (1983).

3. The remaining enumerations of error address the trial court's grant of a directed verdict to appellee after the jury verdict had been returned. "The error, if any, was harmless in light of the jury verdict for [appellee] and this court's disposition of [the Kents'] enumeration regarding the court's instructions to the jury. [Cit.]" *Gibbs v. First Fed. Savings &c. Assn.*, 161 Ga. App. 27, 28 (3) (289 SE2d 1) (1982).

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Sognier, Pope and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge dissenting.

I respectfully dissent from Division 1.

Before closing arguments, and after a hearing considering the matter outside the presence of the jury, the court instructed the jury: " . . . the only area of things that you will consider is whether the events which occurred on September 8th, the day the tooth was extracted, whether any of these events constituted professional negligence. You will not be concerned with whether there was any negligence in the follow-up care subsequent to September the 8th."

One of the factual issues left in the case was whether or not the treating dentist failed to examine, and if necessary, reconstruct the extracted tooth after he pulled it, to assure that all of it and its contiguous parts such as amalgam was removed. It was testified to, and admitted, that failure to do so would constitute negligence. Plaintiff said he did not examine the tooth but just left it on the tray and left the room, and she never saw him again that day or when she came back later. There was also evidence that if examination revealed a missing part, a visual examination of the socket would have to be done and if the missing part was not found, an x-ray would be necessary. The patient testified that the dentist did not examine the socket. He could not remember whether he examined the extracted tooth but that he usually did so.

The doctor who discovered the problem immediately by x-ray several weeks later testified that because he did not see the pre-operative x-ray nor the tooth itself when extracted, he could not say for

certain that the foreign body (amalgam) which he removed from the socket came from the extracted tooth. However, he did testify that there was a "high probability" that it did and further, there was a "high probability," the "greatest probability," that this amalgam got into the socket immediately after the extraction on September 8. He also testified that if the tooth had been examined and reconstructed, and this piece of amalgam was missing from it, it would be seen by the examining dentist, who had the pre-operative x-ray to compare it with. There was also evidence that if one were looking in the socket for a missing part, it might not be seen because of the bleeding and the subsequent clot which would cover it, unless that were removed, and if it were known that a part was missing and could not be seen, an x-ray should be taken, because the missing piece would have to be removed. Although the doctor who detected the embedded amalgam by way of x-ray testified that he would not immediately x-ray the patient who came with a problem such as plaintiff went back to defendant with, this was based on his earlier testimony that he would have examined the tooth upon extraction and so would know that no parts of it were missing. He further testified that if problems develop for the patient and he had a suspicion or worry that a foreign body was in the socket, x-rays would be done and would reveal it; in fact, x-rays did reveal it in this case. The evidence also showed that the foreign body was causing her pain and infection, that after he removed it, the symptoms left within a week. Plaintiff had testified that the extracting dentist did not see her when she went back repeatedly, although she asked for him since he had done the initial extraction, and that she was denied x-rays although she had repeatedly asked for the same because she knew something was wrong.

Thus, although her expert was not asked the full and correct hypothetical, that is, whether the standard of care would require the same dentist to examine his patient when the patient came back repeatedly with pain and problems following extraction, and whether the standard of care would require x-ray if the extracting dentist had not examined the tooth upon extraction or could not remember having done so. There is, I believe, sufficient evidence for the jury to draw such a conclusion, based on all of the evidence as to what did occur, together with the expert's opinion, and I believe that it should have been allowed to consider the issue.

The jury's not finding negligence on September 8 does not conclusively establish that it found the tooth had been properly examined. It could have found that it was examined and the missing amalgam did not appear. That would not foreclose its finding, if allowed to consider the issue, that when the patient returned, she should have been permitted to see the same doctor, who, if he could not then remember whether he examined the tooth or not, should

have taken an x-ray at that point which, as it appears, would have revealed the foreign body embedded.

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 29, 1985 — 

*Richard E. Reiter, Jr., Jay W. Bouldin,* for appellants.
*Walter B. McClelland,* for appellee.