### 11303.  MULLINS *v.* DuVALL.

A cause of action against a physician for injury to his patient from negligence and lack of skill of an attendant or servant of the physician is shown by the allegations of the petition in this case, from which it appears that in the absence of the physician the patient went, as directed by him, to the attendant to have a hypodermic injection administered in accordance with the physician's course of treatment of the patient, and that in its administration by the attendant the needle used for the purpose was broken off in the patient's arm, where it remained until swelling of the arm and fever resulted and the needle was discovered, and in consequence the patient suffered permanent injuries; it being alleged that the attendant was incompetent, negligent, and unskilful in administering the hypodermic injection, and that the physician knew or ought to have known of this incompetency, and did not use proper care in selecting his assistant or agent.

DECIDED OCTOBER 13, 1920.

Action for damages; from city court of Atlanta — Judge Reid. January 5, 1920.

The petition alleged that the petitioner was damaged in the sum of $10,000 by reason of the following facts: "Your petitioner shows that in June, 1919, she was being treated for pellagra by defendant, and had been under his treatment for several months; that every other day he injected a serum of some kind in her left arm with a hypodermic needle; that she had taken about 36 of said treatments; the name of said serum or medicine used by him plaintiff does not know.  2.  Petitioner alleges that she has been examined by expert physicians since, and she alleges that she has not now pellagra, nor has she ever had such ailment or disease, and that said defendant was treating her for something that she did not have, and that his diagnosis of her case was wrong, as she has since his treatment found out, and that she did not know this at the time he was treating her.  3.  Petitioner alleges that she went to defendant's office on Davis street many times, and on several occasions he requested that a negro woman

in his office administer the hypodermic injection, but that she always refused; that on the 5th day of June, 1919, she went to his office and that he was out on his vacation, and, believing it to be necessary to take said injections, and having been previously instructed by defendant that if he were out of his office the negro assistant should administer the treatment, she, being greatly worried and not knowing what to do, finally consented, and said negro assistant or attendant did administer the hypodermic. 4. Petitioner alleges that in a few hours after said injection in her left arm it began to swell and became inflamed, and caused her the most excruciating pain, so that she could not sleep day or night; that her arm swelled to such extent that it was three or four times its normal size; that she in consequence had septic fever, with a temperature of 104; that she within two days called in another physician, who treated her arm daily for more than six weeks; that blood poisoning was imminent from infection; that in about one week the arm burst and discharged great quantities of pus and matter, and in it she discovered that the needle used by the said negro assistant to defendant had been broken off in her arm when she gave the hypodermic aforesaid. 5. Plaintiff alleges that she still suffers greatly with her arm, and that it has become numb and almost useless to her, not being able to hold anything in her hand, which has also become stiff and numb, and her fingers also are stiff, and that she has lost the use of her arm and hand and fingers. 6. Your petitioner alleges negligence in the defendant in having an incompetent assistant, recommended by him and who served his patients in his absence. 7. That he was himself incompetent and negligent in treating her for a disease that she never had. 8. That said negro assistant when she broke off the needle in her arm knew it, and should have at once removed said needle, which she did not do, and this also is alleged as an act of negligence. 9. That Dr. DuVall, when he returned, knew of her condition, and, being her family physician, should have made every effort to relieve her of her suffering, but that he did not come to see her or inquire about her condition; and this is alleged also as an act of negligence of defendant. 10. Petitioner further shows that on account of the injury above set out she is unable to attend to her household duties, that she still suffers greatly from her arm, that her injuries are permanent,

that she is 40 years old and in the prime of her life; she has been rendered a cripple and is maimed for life. 11. In view of the above facts, that she has been damaged by defendant in the sum of ten thousand dollars."

The petition was amended as follows: "Now comes the plaintiff in above-stated case and asks leave of the court to make the following amendment to paragraph 8 of her declaration, at the end of said paragraph: That said defendant DuVall is a person professing to practice surgery and administer medicine for compensation, that his colored agent and assistant, Zera Etta Johnson, was incompetent, negligent, and unskilful in administering the hypodermic aforesaid, and that said DuVall knew or ought to have known of her incompetency, and that he did not observe proper care in selecting said agent and assistant, who in this instance was acting within the scope of her authority; and that she did not exercise a reasonable degree of skill and care in operating on plaintiff, which caused her injuries above set out, nor did defendant exercise a reasonable degree of skill and care in treating her; all to her injury as aforesaid. The serum used by defendant and the treatment cost him about $3.00 for each treatment, all to her injury."

The defendant filed general and special demurrers, and the trial judge passed an order sustaining the general demurrer and dismissing the petition, and the plaintiff excepted. The defendant's contentions on the demurrer are: "(a) That the relation of physician and patient had ceased, a physician having a right to temporarily leave his practice, and that such a relation is a personal and confidential one, and can not exist during the absence of the physician. (b) That the negro woman who performed the operation in question was neither (1) an assistant, nor (2) an agent of the defendant; for such an act cannot be performed by an agent. Also, if there had been any holding out or offer to make the negro his agent, such offer was not accepted and the authority of the agent was thereby revoked. Furthermore, if any agency had been created, it was a special or limited agency, and the agent exceeded her authority, the scope of which the plaintiff was bound to take knowledge of, and cannot hold the principal for an act of a special or limited agent, which is without the scope of her authority."

*Eb. T. Williams, W. I. Heyward,* for plaintiff.

*Mallet & Bell,* for defendant.

JENKINS, P. J.   1. It appears from the petition, with reasonable clearness, that when the patient called at the office of the physician, to receive the usual hypodermic injection, it was at the proper time and in accordance with the regular adopted routine of treatment, as prescribed and employed by the defendant physician; that the relation of physician and patient had not terminated, since the adopted course of treatment, the nature of which was unknown to plaintiff, was still in process of regular administration, and no provision had been made for its discontinuance, but, on the contrary, general directions had been given to the plaintiff, whereby the treatment was to be given by the defendant's attendant or servant in charge whenever he might be absent from his office. The petition excludes the idea that the plaintiff exceeded the authority, since the dealings had with the agent pertained only to the one particular act specifically authorized. It is a general proposition of law that where one holds another out as his special agent, the principal is bound by the agent's apparent authority to do the particular thing thus authorized, and to employ all usual and necessary means that may be reasonably required, in the due, proper, and ordinary performance of the particular purpose of the appointment. *Wise* v. *Mohawk Rubber Co.,* 23 *Ga. App.* 255 (98 S. E. 100). A physician is liable for the negligent acts of one while acting as his agent or assistant. 22 A. & E. Enc. L. 805 (m). It is not our opinion, however, that a physician or surgeon can engage in the practice of his profession by proxy. This is not the purport of the holding. Where a physician or surgeon sends another as his substitute, to treat or perform an operation upon a patient, and the services of the substitute are accepted, the patient will be presumed to have reposed confidence in the professional capacity of the substitute, not as an agent but as the principal, and will be taken to have relied upon him as a physician to exercise his own knowledge, skill, and discretion. Thus, where a physician, on leaving town or in other case of need, recommends or even employs another physician or surgeon to treat a patient for him, he would not, in the absence of what would amount to negligence in the selection, be liable for the negligence or lack of skill of the substitute practitioner. 21 R. C.

L. 395. In the instant case, however, the physician did not delegate his functions and duties as a physician. In authorizing or directing the patient to allow his own employee to perform for him and in his stead this particular service in his absence, he did not renounce any part of his functions as the sole physician in the case. Nothing whatever was left to the discretion of the attendant, since what the treatment was to be and when it was to be administered were determined by the line of treatment adopted by the physician himself, and the authority given to the attendant related solely to the one definite and specific act authorizing the mere physical administration of the prescribed treatment. So far as the question of the amount of skill required by the act is concerned, the direction given amounted to his assurance as an expert that the act was not of such character as to require in his absence the services of another physician, but that in such contingency she might with safety receive the treatment as rendered for him and on his behalf by his office attendant or servant. It was upon such implied assurance, rather than upon any confidence in the professional skill and discretion of defendant's servant, that the patient had a right to rely.

*Judgment reversed. Stephens and Smith, JJ., concur.*