48445. GILSON et al. v. MITCHELL et al.

ARGUED SEPTEMBER 13, 1973 — DECIDED FEBRUARY 27, 1974
— REHEARING DENIED MARCH 15, 1974 —

*Ross & Finch, Claude R. Ross, Baxter H. Finch, A. Russell Blank,* for appellants.

*T. M. Smith, Jr., Hunter S. Allen, Jr., Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler,* for appellees.

*Beryl H. Weiner,* amicus curiae.

HALL, Presiding Judge.

Plaintiffs below and appellants here are Mr. and Mrs. Irving Gilson; defendants-appellees are Dr. W. E. Mitchell, Sr., Dr. W. E. Mitchell, Jr., and Dr. Raul Soria. The suit grew out of the alleged negligence of the defendants in connection with the use of a central venous pressure catheter ("CVP Catheter") in Mr. Gilson's right external jugular vein throughout a period of several days of hospitalization during which time he underwent stomach surgery. Such a CVP Catheter is a flexible tube normally several inches long, designed to reach from the neck through a vein into the heart area, and the insertion of the one in question was done by Dr. Soria. The removal was accomplished by Dr. Mitchell, Jr., who found the catheter so short upon pulling it out of the vein that he, in conjunction with Dr. Mitchell, Sr., concluded that the missing length was adrift somewhere in Mr. Gilson's circulatory system where it could produce quick death. Mr. Gilson was inconclusively x-rayed to locate the missing part and then flown to Texas for treatment by a heart specialist whose tests were also inconclusive. Apparently, the fate of the missing length has never been

medically determined.

Mr. Gilson's negligence suit against the three doctors sought recovery for his unnecessary subjection to mental distress and to surgical procedures, on the theory that the alleged missing length never existed but was in fact cut off by Dr. Soria prior to insertion. Mrs. Gilson's claim is for loss of consortium. The Gilsons alleged independent but concurring acts of negligence by the doctors, and sought a joint recovery against them. The rewritten and modified complaint advanced the claim that the doctors were joint tortfeasors and that their acts of negligence were as follows: Dr. Soria, without informing the Drs. Mitchell, and without telling plaintiffs of the experimental nature of his proceedings, inserted an abnormally short catheter and subsequently did not follow the patient's progress through removal of the catheter; the Drs. Mitchell, upon discovering the strangely short catheter, did not inquire of Dr. Soria the length he used but jumped to the conclusion that a piece was lost and immediately subjected the patient to expensive and painful procedures to "locate" the missing part. Thus the various acts of the Drs. Mitchell and Dr. Soria together produced the single injury to plaintiff of needless subjection to medical procedures and mental distress.

At trial, the Gilsons' stance was predicated upon their theory that the doctors were joint tortfeasors; that since the Drs. Mitchell presented evidence the plaintiffs should have the last argument to the jury; and that a joint verdict against the defendants was authorized. The doctors argued successfully below that they were not joint tortfeasors because they were not alleged to have acted in concert. The trial judge agreed with the doctors and ruled that they were *not* joint tortfeasors but were merely defendants in two separate negligence actions—one against the Drs. Mitchell as medical partners and one against Dr. Soria—and therefore, since Dr. Soria presented no evidence (though the Drs. Mitchell did) Dr. Soria was given the final closing argument to the jury. The order of closing arguments was—the Drs. Mitchell; plaintiffs; Dr. Soria. Denial to plaintiffs-appellants of the right to give the final argument is enumerated as error.

Also enumerated is the trial judge's instruction to the jury that should they find for plaintiffs, separate verdicts in individual amounts would be required against the two "groups" of defendants. (There were four additional enumerations of which summary disposition is made below.)

The Gilsons were entitled to have the case tried to the jury on their theory of the doctors' liability unless as a matter of law such theory was inapplicable. Our decisive question at this point is whether as a matter of law acts such as those alleged in the complaint to have occurred would make of these doctors joint tortfeasors. We answer this question "yes" and rule that appellants are entitled to the benefits of a trial conducted upon their joint tortfeasor theory. A critical part of this holding is that "concert" of action is not required to be shown to constitute persons joint tortfeasors.

The Georgia cases concerning the definition of joint tortfeasors present some confusion in that certain decisions seem to require concert of action and others do not. It is our purpose here to outline the weight of authority in this state, and to eliminate certain prior inconsistent pronouncements of this court.

Let it be emphasized here that this discussion is concerned with the joint tortfeasor concept as a matter of substantive law and not merely as a procedural concept affected by recent joinder rules.

It has always been true that where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage. However, American law has expanded over the years from this beginning point, and presently textwriters and most Georgia cases are agreed that concert of action is not required — concurrent and independent wrongdoers are joint tortfeasors *if* their actions produce a single indivisible result and a rational apportionment of damages cannot be made. Examples of such an indivisible result could be death, a broken leg, any single wound, the total burning of a house, or sinking of a barge. Prosser, Torts § 52, p. 315 (4th Ed. 1971). "Where two or more causes combine to produce such a single result, incapable of any logical

division, each may be a substantial factor in bringing about the loss, and if so, each must be charged with all of it. Here again the typical case is that of two vehicles which collide and injure a third person. The duties which are owed to the plaintiff by the defendants are separate, and may not be identical in character or scope, but entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made." Id., p. 315.

"The correct procedure is to look first to the time of the commission of the acts. If there was concert of action, then there is no need to go further to establish entire liability. But if there was no concert, the next step should be to look to the combined effect of the several acts. If the acts result in separate and distinct injuries, then each wrongdoer is liable only for the damage caused by his acts. However, if the combined result is a single and indivisible injury, the liability should be entire. Thus, *the true distinction to be made is between injuries which are divisible and those which are indivisible.*" Note, Joint Torts and Several Liability, 17 Tex. L. Rev. 399, 405 (1939). (Emphasis supplied.) "The conclusion to be drawn from this grouping of the cases would seem to be, that a tort is 'joint,' in the sense which the American courts have given to the word, when no logical basis can be found for apportionment of the damages between the defendants. The question is whether, upon the facts, it is possible to say that each defendant is responsible for a separate portion of the loss sustained. The distinction is one between injuries which are capable of being divided, and injuries which are not. If two defendants, struggling for a single gun, succeed in shooting the plaintiff, there is no reasonable basis for dividing the injury, and the tort is joint. If they shoot him independently, with separate guns, and he dies, the tort is still joint, for death cannot be apportioned. If they merely inflict separate wounds, and he survives, a basis for division exists, no matter how difficult the proof may be, and the torts are several." Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413, 442 (1937).

This test for determining joint tortfeasors, namely, whether the injury is divisible or indivisible, is that

proposed in the Restatement Second of Torts which, summing up an entire chapter on "Contributing Tortfeasors" in the prior Restatement, set forth this criterion: "(1) Damages for harm are to be apportioned among two or more causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm. (2) Damages for any other harm cannot be apportioned among two or more causes." Restatement, Second, Torts, § 433 A. Thus, those tortfeasors among whom damages cannot be apportioned under these rules are properly regarded as joint tortfeasors. This is a refinement of the first Restatement, which in § 879 entitled "Concurring or Consecutive Independent Acts" stated: "Except as stated in § 881, [concerning nuisances] each of two persons who is independently guilty of tortious conduct which is a substantial factor in causing a harm to another is liable for the entire harm, in the absence of a superseding cause." Restatement, Torts, p. 446, § 879. See also Comment thereto explaining with examples the scope of the rule. It should be noted that even in the earlier Restatement, concert of action was not required.

The weight of authority in Georgia is entirely consistent with this view. The Georgia Supreme Court, in recently deciding *Register v. Stone's Independent Oil Distributors, Inc.,* 227 Ga. 123 (179 SE2d 68), implicitly ruled that concert of action is *not* required for a joint tort, because underlying the entire opinion is the court's presumption that the defendants, including a bus driver, a truck driver and an auto driver were joint tortfeasors in a fact situation involving injuries to one Bailey caused by the collision of their three independently driven vehicles. Accord, *Southeastern Truck Lines, Inc. v. Rann,* 214 Ga. 813 (108 SE2d 561); *Eidson v. Maddox,* 195 Ga. 641, 643 (24 SE2d 895) (both involving a collision of numerous drivers, treated by the court as joint tortfeasors.) Those cases continue the viewpoint on joint torts held by the court since at least 1921, when in deciding *Gooch v. Georgia Marble Co.,* 151 Ga. 462 (107 SE 47) the court ruled that where one suffers an injury as a result of the concurring (but not necessarily concerted) negligence of two tortfeasors, that party may

maintain a joint or several suit against them, and recovery in a joint suit will be supported if the negligence of both contributed to the injury although the degree of care owed to the party by the two defendants is not the same. Accord, *Hopkins v. City of Atlanta,* 172 Ga. 254 (157 SE 473). In *Gooch,* deceased was tripped by an obstruction placed by his employer the marble company, and after he had fallen was run over by a defective car of the railroad company. The widow sued both companies, and the court ruled that they were joint tortfeasors. No concert of action was present. Thus, in the often expressed view of the Georgia Supreme Court, concert of action is not required to constitute a joint tort.

This court has stated forcefully that concert is not required: "In this State, notwithstanding the law elsewhere, it is not necessary that there be intentional concert or simultaneous action among those sought to be held jointly liable for injury. All that is required is that negligent acts, although separate and independent, be found to have combined naturally and directly to produce a single injury. [Citations.] The statement in *Close v. Matson,* 102 Ga. App. 663 (2) (117 SE2d 251), cited by appellants, which intimates that a concert of action is required to find a joint tortfeasor relationship, is against the weight of authority and has been criticized as dictum." *Stone's Independent Oil Distributors v. Bailey,* 122 Ga. App. 294, 299 (176 SE2d 613). Accord, *Gosser v. The Diplomat Restaurant, Inc.,* 125 Ga. App. 620 (188 SE2d 412) (a drunken restaurant guest who hit plaintiff-guest, and the restaurant failing to restrain the drunk, held joint tortfeasors); *Mullis v. Chaika,* 118 Ga. App. 11 (162 SE2d 448) (service station operator and customer, whose combined, though independent, acts of negligence injured plaintiff, held joint tortfeasors); *Boner v. Soltero,* 110 Ga. App. 517 (139 SE2d 162) (drivers of various autos held joint tortfeasors when their collision injured plaintiff.) In none of these last three cited cases was there any appearance of concerted action; in each of the three this court stated that persons whose separate acts of negligence naturally combine to produce a single injury are joint tortfeasors. This was also the approach in *City of Buford v. Hosch,* 104 Ga. App. 615 (122 SE2d 287) in

which the court quoted from and approved an example from Restatement, Torts, § 879, wherein A negligently drives into C and harmlessly knocks him into the street but before he can arise he is negligently run over and injured by B; A and B are joint tortfeasors each wholly liable for C's damages.

Against the weight of Georgia authority discussed above, however, stand certain cases creating or appearing to create a conflict by adopting the opposite view, namely, that concert of action is required. One such case is our own recent decision in *Bulloch County Hospital Authority v. Fowler,* 124 Ga. App. 242 (183 SE2d 586). There, plaintiff's husband suffered a heart attack and was taken to the hospital. His doctor was called to come immediately, but dawdled on the way for an hour, chatting with a friend. Knowing that he had been summoned, the hospital refused plaintiff's urgent request to call for other help. The husband died. In plaintiff's suit against the doctor and the hospital seeking damages against them jointly on the basis of their concurring acts of negligence, this court held "there was no concert of action. The actions of the doctor and of the hospital were mutually independent. They were not joint tortfeasors. Separate verdicts will be required." Id., p. 246. This conclusion was in error, and we hold today that so much of the opinion in *Bulloch County Hospital Authority v. Fowler,* supra, as held that the defendants were not joint tortfeasors and that separate verdicts were required was incorrect and we expressly overrule it. In addition to citing numerous prior decisions of this court, *Fowler* relied for its ruling on three Supreme Court cases, *Schnieder v. City Council of Augusta,* 118 Ga. 610 (45 SE 459); *Howe v. Bradstreet Co.,* 135 Ga. 564 (69 SE 1082); and *Vaughn v. Burnette,* 211 Ga. 206 (84 SE2d 568). Although those cases appear to require concert of action, they are distinguishable from the case at hand and from the *Fowler* fact situation. *Schnieder* and *Vaughn* both presented situations invoking nuisance concepts, and nuisance cases proceed under a different rule, which is that joint participants in the creation of a nuisance are *not* jointly and severally liable for the full total of plaintiff's damages, but only for their individual parts.

Therefore, nuisance defendants are not joint tortfeasors in terms of several liability, but the rules applicable to them do not carry over to other tortfeasors. See *Key v. Armour Fertilizer Works,* 18 Ga. App. 472 (89 SE 593); Restatement, Torts, § 881. *Howe* is distinguishable also, because it was an attempt to sue defendants jointly for different publications of the same libel. The court's ground for its decision that the defendants were not joint tortfeasors was that republication of a libel is a separate and independent tort. This decision is wholly in line with the authorities and texts discussed above urging that the possibility of allocation of damages is the key issue: in *Howe,* each libel occurred in a different city, and plaintiff's different damages traceable to each libel should have been readily ascertainable.

Drs. Mitchell and Dr. Soria urge that *Knight v. Lowery,* 228 Ga. 452 (185 SE2d 915), indicates that the Supreme Court clings to the requirement of concert of action. They point to page 455 of the opinion in which, discussing liability of the driver who injured the boy and the physician alleged to have subsequently treated him negligently, the court said, "Here, the physician and the driver of the automobile did not act in concert to produce a single injury, and they are not joint tortfeasors. Rather, we conclude that they are successive tortfeasors. . ." The decision of the Supreme Court that the defendants were successive tortfeasors is eminently correct, and wholly in line with what we have written here, because a reasonable basis existed on which damages could be apportioned: the driver was liable for the initial injury and its subsequent aggravation, but the doctor was liable only for the aggravation caused by his alleged malpractice. Because the damages could be apportioned the defendants were not joint tortfeasors. On the other hand, we conclude that the court did not mean to indicate that concert of action was the sine qua non of a joint tort: to the extent to which the court's quoted sentence as written may seem to indicate that, we conclude that the use of the controversial legal phrase "in concert" was unintentional. In short, we do not read the holding in *Knight v. Lowery,* supra, to be in conflict with the earlier decisions of that court which held that concert of action

was not required for a joint tort.

Without attempting to review each and every prior decision of this court on the subject of joint tortfeasors, it will suffice for us to state that the bulk of our decisions are consistent with the rule stated herein. E. g., *Akin v. Randolph Motors,* 95 Ga. App. 841, 847 (99 SE2d 358); *Atlanta Newspapers, Inc. v. Hitchcock,* 89 Ga. App. 322, 327 (79 SE2d 342); *Joyce v. City of Dalton,* 73 Ga. App. 209, 210 (36 SE2d 104); *Locke v. Ford,* 54 Ga. App. 322, 322-323 (187 SE 715); *McGinnis v. Shaw,* 46 Ga. App. 248, 250 (167 SE 533). Insofar as any prior decisions conflict with the rules herein adopted, the same are overruled.

It is our hope that what is written here today may serve to instill a greater degree of certainty into questions of joint torts. Too frequently the following "rules" have been stated:

" 'It is a well established general rule that "where two or more persons or corporations, acting independently, without concert, plan, or other agreement, inflict a damage or cause an injury to another person, the persons inflicting the damage are not jointly liable therefor, but each is liable for his proportion only of the damages, and in such case a joint action against them cannot be maintained." But it is also true that even though voluntary, intentional concert is lacking, if the separate and independent acts of negligence of several persons combine naturally and directly to produce a single injury, they may be sued jointly, despite the fact that the injury might not have been sustained had only one of the acts of negligence occurred; and there can be a recovery against all or any one of the responsible parties.' " *City of Buford v. Hosch,* 104 Ga. App. 615 (122 SE2d 287); accord *Smith v. Floyd County,* 36 Ga. App. 554 (5) (137 SE 646); *Scearce v. Mayor & Council of Gainesville,* 33 Ga. App. 411 (126 SE 883).

Such language has been productive of confusion because the two opposing rules are not stated in such a way as to distinguish them from each other, and the litigant urging the joint tort concept merely recites the second half of the quoted language and his opponent recites the first half. The rule henceforth will be that even though voluntary, intentional concert is lacking, if the separate

and independent acts of negligence of several persons combine naturally and directly to produce a single indivisible injury, and a rational basis does not exist for an apportionment of damages, the actors are joint tortfeasors. In actions for trespasses to property under the authority of Code § 105-2011 the jury may apportion damages among the trespassers. The rule pronounced today, being a general common law rule, is not intended to conflict with the continued operation of the statutory rule allowing apportionment of damages in the particular kinds of actions contemplated by Code § 105-2011 and not involved here.

To return to the appeal presently before us, what has gone before makes plain that the Drs. Mitchell and Dr. Soria may correctly be sued as joint tortfeasors. Though their alleged acts of negligence did not occur at the same time, they combined naturally and directly to create an urgent situation in which the missing portion of the catheter was thought to be in Gilson's blood stream, which required that he be subjected to further medical procedures. On these facts his subjection to medical procedures is not capable of apportionment, that is, so much for the negligence of Dr. Soria initially and so much for the negligence of Drs. Mitchell. Under plaintiff's theory of his case, the entire course of the procedures was required by the combined acts of the doctors, and he is entitled to sue them as joint tortfeasors.

Dr. Soria argues that doctors may not be joint tortfeasors with each other, and he cites *Mullins v. Duvall,* 25 Ga. App. 690, 693 (104 SE 513), wherein this court stated that where a physician sends another as his substitute, the second doctor is not the agent of the first, and the first is not liable for negligence of the second. All that case held was that a doctor is not liable on the basis of respondeat superior for the torts of another doctor. The case lays down no rule—and there is none—that doctors may not be joint tortfeasors when they are alleged to have been concertedly or concurrently negligent.

With respect to the particular question raised by the enumeration of error, concerning which party has the right to the closing argument to the jury where there are multiple defendants and some but not all of them have

introduced evidence, there is relatively little authority. However, such Georgia authority as is available compels the conclusion that the usual rule that a defendant presenting no evidence is entitled to speak last, e. g., *Sutherland v. Woodring,* 216 Ga. 621 (118 SE2d 482); *American Casualty Co. v. Seckinger,* 108 Ga. App. 262 (132 SE2d 794) yields to the right of plaintiff to close as to all defendants where some though not all defendants have presented evidence. *King v. King,* 37 Ga. 205, 216; *Doster v. State,* 25 Ga. App. 723 (104 SE 642). This is also the rule applied on these facts where defendants are specifically sued as joint tortfeasors. *Co-Op Cab Co. v. Preston,* 67 Ga. App. 580, 581 (21 SE2d 251). "The question for the court in all such cases, is, was there any evidence introduced for the defense, against the complainant's demand? If there was, then the complainant's solicitor is entitled to open and conclude the argument before the jury." *King v. King,* supra, p. 216.

Because these doctors were correctly sued as joint tortfeasors, plaintiffs had the right to open and close the argument to the jury as to all defendants. Improper denial of the right to open or conclude, where injury results, will work a reversal unless the verdict was demanded by the evidence. *Milligan v. Milligan,* 209 Ga. 14 (70 SE2d 459); *Georgia Power Co. v. Puckett,* 181 Ga. 386, 389 (182 SE 384); *Phelps v. Thurman,* 74 Ga. 837; *Chapman v. Atlanta & West Point R.,* 74 Ga. 547. A review of the trial transcript which was over 700 pages in length shows that the evidence at the trial authorized but did not demand a verdict for the defendants; and therefore reversal is in order because plaintiffs were denied the closing argument.

The Drs. Mitchell urge that any error as to closing argument, if the same results in reversal of the judgment, should not be deemed error as to them, because plaintiff closed as to them and only Dr. Soria's counsel spoke after plaintiff's closing. In essence, they ask that if plaintiffs be granted another trial, only Dr. Soria should be tried. Though we have located no case with precisely similar facts to these, the general rule is that a judgment *against* joint tortfeasors is indivisible and reversal as to one will entitle the other to a new trial (see *Eckerd-Walton, Inc. v. Adams,* 126 Ga. App. 210 (190 SE2d 490); *Smith v.*

*Nelson,* 123 Ga. App. 712 (182 SE2d 332)), though a defendant who was found not liable *on the merits* will not necessarily be compelled to go to trial again merely because his co-defendants are granted reversals of judgments against them (see *Ammons v. Horton,* 128 Ga. App. 273 (196 SE2d 318)). Here we cannot say that the Drs. Mitchell were found not negligent on the merits at a proper trial. Plaintiff was deprived of the value of his joint tortfeasor theory as to all defendants; Dr. Soria argued last, to the inevitable benefit of all defendants; as will be discussed below, the jury were incorrectly instructed concerning the verdict as to both groups of defendants. We rule that his verdict is entire and inseparable and our reversal runs to all defendants. A further inequity of an opposite holding would be that should the judgment for the Mitchells stand and should Dr. Soria lose upon re-trial, he would have no right of contribution from the Mitchells and the question of their negligence on the merits will not have been determined in a properly tried case.

Concerning the Gilsons' fifth enumeration our ruling that the defendants were joint tortfeasors leads to the further conclusion that the trial judge erred in disallowing a joint verdict and in instructing the jury that if they found for plaintiffs, separate verdicts against the doctors would be required. *Eidson v. Maddox,* 195 Ga. 641, 643 (24 SE2d 895); *Craven v. Allen,* 118 Ga. App. 462 (164 SE2d 358).

What has been written answers Enumerations 4 and 5. Enumerations 1, 2 and 3 concern responses made by certain prospective jurors during voir dire examination. Because retrial will be required and it is unlikely that those specific situations would recur, no ruling is required. Code Ann. § 6-701 (b). See *Williams v. State,* 125 Ga. App. 9 (2) (179 SE2d 351). For a similar reason, we do not rule upon Enumeration 6 urging error in the trial court's having charged on accident. Since the evidence may not be the same upon a new trial, it is unnecessary to rule upon whether the evidence in this trial authorized the charge. See *Tompkins v. West,* 123 Ga. App. 459 (2) (181 SE2d 549).

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Quillian, Clark and Stolz, JJ., concur. Pannell and Deen,*

*JJ., concur in the judgment. Evans, J., concurs specially.*

EVANS, Judge, concurring specially.

I will deal with enumerations of error numbers 3, 4, 5 and 6, in that sequence. While the majority reverses, and I am in full accord, there are certain enumerations of error not dealt with, as to which I feel comment should be made, especially as Code Ann. § 6-701 requires that "all judgments, rulings, or orders rendered in the case which are raised on appeal, and which may affect the proceedings below, shall be reviewed and determined by the appellate court."

3. The most flagrant error in this entire record is set forth in Enumeration number 3, and which is not treated by the majority opinion.

The trial judge excused himself from the courtroom for a few minutes, by consent of counsel, while the voir dire examination of prospective jurors continued. Plaintiff's counsel inquired of Mr. Harold Martin, a prospective juror, if by reason of his social acquaintance with one of the defendants, Doctor Mitchell, it would be embarrassing to him as a juror to return a fair and impartial verdict for the plaintiff, to which Mr. Martin replied as follows: "I can't say it would be embarrassing to me, *but it would be very difficult to convince me that a man of Doctor Mitchell's reputation, skill, ability and character, that he has established over the years, could be guilty of malpractice."* (Emphasis supplied.)

This was high praise, indeed, as to the defendant, and was altogether uncalled for and improper! It was more than a tremendous compliment, it was a *subtle appeal to the other jurors on the panel not to find Dr. Mitchell guilty of malpractice.* The prospective juror was no novice, no novitiate, but was an experienced man of the world, and was an editiorial writer for The Atlanta Constitution. The prestige which attends that position naturally caused his auditors to lend more credence to his statements than to sayings by one from the ordinary walks of life. The prospective juror did not accidentally stumble into saying the wrong thing; *he knew full well what he was saying, and what his reasons were!* This was nothing more or less than a calculated, deliberate

attempt to improperly influence the jury as to its verdict in the case on trial.

Illustrative of the zeal of the prospective juror in Dr. Mitchell's behalf, he then requested permission to make further comment, and delivered the following unsolicited and altogether improper remarks, to wit: "I believe in cases of this sort, that *the jury system as we know it today, does not apply, that none of us are competent to judge the skills of a physician in a case like this, and it should be judged by physicians or by experts in the field.* "(Emphasis supplied.)

Thus, this juror, with one purpose in mind, that of bringing aid and comfort to his friend who was being sued, with fulsome praise extolled the greatness of the doctor, as to reputation, skill ability and character, and let it be known by all of the listening jurors that he, Martin, would be very difficult to convince in writing a verdict against the doctor for malpractice; and then proceeded to make an unwarranted attack on our system of jurisprudence, not only seeking to undermine trial by jury, but also to instruct the listening jurors that none of them was competent to even sit as a juror in a case like the one on trial; and that only physicians should be allowed to sit on a jury in a court of law where a physician is on trial for malpractice. In short, he was telling the jurors, with consummate skill, not to return a verdict for malpractice against the defendant physicians.

When the trial judge returned to the courtroom, plaintiff's counsel related what had taken place, and moved that the two panels of jurors in attendance be excused and new jurors brought to court in their place. The trial judge was faced with a situation when it was time to call a spade a spade! The two panels of jurors, through no fault of their own, had become disqualified because of the prejudicial statements set forth above by one who sought to poison their minds against the plaintiff. The only possible way to have cured this grave infraction of court decorum and propriety was to disqualify all of the jurors in attendance, or to take prompt, firm, and stern disciplinary action against the offending juror, in the presence of the other jurors. The trial judge was empowered by law with the tools for

controlling and dealing with conduct that tends to disrupt the orderly processes of court, or so near thereto as to disturb, interrupt or hinder same; and he was further empowered to control the conduct of each and every person connected with the judicial proceeding before the court as to each and every matter appertaining to said proceeding. See Code §§ 24-104, 24-105.

But the trial judge merely announced that Mr. Martin was disqualified as a juror, and later instructed the jury not to be influenced by his remarks. This did not even amount to a reprimand or rebuke — nor was it equivalent to a slap on the wrist.

What could be more harmful—more devastating—to any litigant's case than for a presumptively disinterested juror to stand up in the courtroom in the presence of all other jurors, and disparage, down-grade and smear the position of that litigant by telling the jurors they are not competent to make a finding in his favor? Suppose, in every case, one of the jurors took it on himself to stand up and make a speech in the courtroom, and with skilful words and false logic, instruct the listening jurors that they are not competent to render a verdict against his friend? That is what was done here — not accidentally, not awkwardly, but with deliberation and zeal. Such conduct ought never to be tolerated! If a similar situation ever arises again, it is the duty of the trial judge to promptly interfere to prevent; and to act with such a singleness of purpose as to leave no would-be offender under any misapprehension as to the sanctity of judicial proceedings, and of the decorum and order which must obtain in our courts. And, most important, all of us must be forever kept on notice that the stream which flows swift and free from the fountain-head of justice, the jury system, must never be allowed to become polluted.

4.   I fully concur with the majority opinion in holding that plaintiff was entitled to make the concluding argument. It is made plain by the following authorities, cited by the majority, that where there are two or more defendants, and only one of the defendants introduces evidence, the right of each and all defendants to conclude the argument is lost and the plaintiff is entitled to open and conclude. *Doster v. State,* 25 Ga. App. 723 (1) (104 SE

642); *Co-op Cab Co. v. Preston,* 67 Ga. App. 580, 581 (4) (21 SE2d 251); *King v. King,* 37 Ga. 205.

5. I concur with the majority opinion in holding that the trial court erred in failing to charge that one verdict for the same amount should be rendered against all joint defendants found to be liable. I further concur with the majority in holding that where there is a concert of action by defendants in the infliction of the injury or damage, a joint verdict is authorized; and further that even where there is no concert of action, but the actions of joint defendants concur to produce an injury as to which no rational apportionment of the damages can be made, a joint verdict is authorized.

But I go a step further and point out that Georgia has only one statute which authorizes a recovery of different amounts against different defendants in one suit, and that is Code § 105-2011. This statute is limited to *trespass upon realty.* Action for personal injuries are not covered by said statute. *Eidson v. Maddox,* 195 Ga. 641, 643 (24 SE2d 895); *Hightower v. Landrum,* 109 Ga. App. 510 (5a) (136 SE2d 425). Further, in Georgia, where suit is brought against joint defendants for homicide or injury to the person, each defendant is liable for the whole or entire damage, even though one defendant may have committed only simple negligence, while the other defendant committed wilful and wanton misconduct, and thus contributed in a greater degree to the injury. Each is liable for the whole damage, and if one of the wrongdoers is not sued, the one who is sued shall be liable for all of the damage. *Wilson v. Ray,* 64 Ga. App. 540, 543 (13 SE2d 848); *Gooch v. Ga. Marble Co.,* 151 Ga. 462 (107 SE 47).

6. The majority opinion does not deal with Enumeration number 6, which relates to the trial judge's charge on accident. This enumeration should be considered, as it may arise at the next trial of this case. Code Ann. § 6-701 provides that when an appeal is taken, "all judgments, rulings, or orders rendered in the case which are raised on appeal, and which may affect the proceedings below, shall be reviewed and determined by the appellate court."

None of the defendants pleaded accident, nor was

there any evidence introduced to suggest accident. "Accident is an event that takes place without one's foresight or expectation; that which takes place or begins to exist without design." Code § 102-103.

In *Johnson v. National Life &c. Co.,* 92 Ga. App. 818 (1) (90 SE2d 36), it was held that ". . . for an injury to result from accidental means it must be the unexpected result of an *unforeseen or unexpected act* which was *involuntarily and unintentionally* done." The acts of the physicians here were not involuntarily or unintentionally done; they were done intentionally and of the doctors' own volition. The acts of the doctors were not unforeseen or unexpected; to the contrary the acts (not necessarily the results) of the doctors were foreseen and expected by them. The defendants were given the full benefit of law to which they were entitled, when the trial judge charged that they could not be held liable unless they were negligent. *Accident should not be charged at the next trial.* As this question most assuredly will arise at the next trial, there is no excuse for our not deciding it here and now.