A90A0168, A90A0169. DeKALB COUNTY v. ORWIG;
and vice versa.
(395 SE2d 824)

BIRDSONG, Judge.

At the trial of this case, the jury found appellant DeKalb County negligently failed to discover and remove an obstruction placed by a third party (Georgia Power) in its main sewer line after the obstruction caused 3,000 gallons of raw sewage, including excrement, to back up and flood cross-appellant Orwig's home. The evidence admitted at this trial authorized a finding that despite a county department supervisor's early opinion that the fault was in the county's main line; and despite the abnormal quantity of raw sewage present, so deep in places that a county supervisor declined to enter the house fully to investigate for fear of ruining his boots; and despite plaintiff's expert's insistence that the fault was not in plaintiff's own sewage line, the county insisted to plaintiff that the problem was in her own plumbing system.

Three weeks later the plaintiff's home was again flooded by large amounts of raw sewage. Thereafter, the county inserted a camera into the main sewage line and discovered a metal grounding rod from a nearby power pole had been driven (by Georgia Power) directly into the center of the main sewer line, on plaintiff's property a few feet downstream from the intersection of the main sewer line and her lateral line. The county then removed this obstruction.

The county defended its failure to discover and remove the rod after the first backup by saying that during its emergency crew's investigation of the first incident while the sewage was still backing up into plaintiff's home, the crew and supervisors diligently checked the manhole above plaintiff's property and the manhole below plaintiff's property and, with the use of dye, found the water sewage running freely. However, plaintiff's expert determined and testified that the reason the main sewer line was running freely at that time was that the enormous quantity of obstructed sewage had been sucked up into plaintiff's line, so that naturally there was no sewage blockage to observe on that occasion; and the jury by its verdict apparently determined that the county crew should have considered this fact or possibility and with ordinary care could have discovered the presence of

the obstructing metal rod on the occasion of the first sewage backup.

There was evidence that plaintiff spent in excess of $40,000 for the repair and cleaning of her home and furnishings and had expended all her retirement savings and suffered much distress. Additionally, the trial court disallowed evidence that plaintiff had received $30,000 from Georgia Power on grounds that apportionment is inappropriate since Georgia Power and the county would not be jointly and severally liable for creation of a nuisance (*Gilson v. Mitchell*, 131 Ga. App. 321, 328-329 (205 SE2d 421)), and that the new collateral source rule allowing evidence of third-party payments was not in force when plaintiff's cause of action arose, citing *Bennett v. Haley*, 132 Ga. App. 512 (208 SE2d 302); and see *Polito v. Holland*, 258 Ga. 54 (5) (365 SE2d 273).

These appeals involve serious, obfuscatory attacks upon the imposition on the county of any liability. According to some decisions of the Supreme Court, unless a county is relieved of sovereign immunity by the maintaining of liability insurance (*Ward v. Bulloch County*, 258 Ga. 92 (365 SE2d 440)), such county may be liable under *Duffield v. DeKalb County*, 242 Ga. 432 (249 SE2d 235) et al., for damages for maintenance of a nuisance, only upon the basis of an "inverse condemnation," defined as consequential damages to property "because of *public improvements*," or in connection with a project for public improvement (*Fulton County v. Baranan*, 240 Ga. 837, 838 (242 SE2d 617)). And, "when the nuisance does not amount to a taking for public purposes the county is not liable." *Miree v. United States*, 242 Ga. 126, 134 (2) (249 SE2d 573). See also *Williams v. Ga. Power Co.*, 233 Ga. 517, 519 (212 SE2d 348), involving the alleged maintenance by a county of a nuisance whereby plaintiff's mother, driving down a boat ramp which appeared to be a county road, drowned in her car: " '(W)hile under the constitution, a county is held liable for taking or damaging private property for public use . . . and under statutes it is made liable to suits for torts on account of personal injuries caused by defects in bridges over its public highways . . . there is no constitutional or statutory provision which can be taken to render a county liable for a tort on account of personal injuries arising from a defect in a highway constructed or repaired by the county . . .' *Purser v. Dodge County*, 188 Ga. 250, 252 (3 SE2d 574). . . . The [plaintiffs] argue, however, that the county is liable in this case for the maintenance of a nuisance and relies on the cases of *Nalley v. Carroll County*, 135 Ga. 835 (70 SE 788); *DeKalb County v. McFarland*, 223 Ga. 196 (154 SE2d 203) and *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141). There is no merit in this contention. The *Nalley* and *McFarland* cases involved nuisances which amounted to *takings of property by the counties* without paying the owners compensation. The *Phillips* case involved a municipality and not a

county." (Emphasis supplied.) See also *Reid v. Gwinnett County*, 242 Ga. 88, 89 (249 SE2d 559), which holds under the same principles of inverse condemnation that a county is liable for *damage to a landowner's property "because of public improvements."*

Such decisions conclude, therefore, that damages recoverable in such a case are "a substitution for the damages recoverable in a condemnation action [and] there is no constitutional or statutory authority for the recovery of punitive damages against a county" (*Fulton County v. Baranan*, supra at 838), or any other damages other than damage to property, as in a condemnation case. See *Wilmoth v. Henry County*, 251 Ga. 643 (309 SE2d 126).

Upon those cases, the defendant DeKalb County contends inter alia that it cannot be liable at all because its operation and maintenance of the sewer main, as a nuisance or otherwise, did not amount to a *taking* of plaintiff's property for *public purpose*, and hence was not an "inverse condemnation." Also upon those cases, the trial court (although allowing the suit for nuisance) disallowed damages to plaintiff for pain and suffering and emotional distress, because such injuries are not compensable in condemnation cases. *Held*:

1. This case is controlled by the facts and latest pronouncements in *Fulton County v. Wheaton*, 252 Ga. 49, 50 (310 SE2d 910) where it was held that "[t]he failure of a county adequately to *maintain a culvert*, resulting in property damage from flooding, can constitute a *nuisance. DeKalb County v. McFarland*, [supra]. . . . Liability of a [government entity] cannot arise *solely* from its approval of construction projects which increase surface water runoff. Rather, it is the county's failure, to maintain properly the culvert, resulting in a nuisance, which creates its liability. Cf. *City of Columbus v. Myszka*, 246 Ga. 571(272 SE2d 302). . . ."

The court in *Fulton County v. Wheaton* at 50-51 held further: " '*In a continuing abatable nuisance case*, the plaintiff is not limited to a recovery of rental value or market value; rather he *may recover any special damages whether the injury is of a temporary or a permanent nature.*' *City of Columbus v. Myszka*, [supra] at 573." (Emphasis supplied.)

It thus appears that the rule allowing county liability only for "inverse condemnation," which is a "taking for public purpose," evolved judicially and perhaps fictitiously as the sole exception to sovereign immunity, under the vestment of condemnation laws, there being no other means of holding the county liable. See Georgia Constitution, Art. I, Sec. II, Par. IX. The early cases extrapolated the theory of eminent domain (Art. I, Sec. IX, Par. V) to include liability for a "nuisance" which *in those cases* did, as it happened, occur as a result of some public improvement or in connection with some public project. Since they created an exception to constitutional law, the lan-

guage of those cases was for a time interpreted as allowing liability *only* for a nuisance created by or amounting to a "taking for public purpose." But, the Supreme Court in *Fulton County v. Wheaton* has recognized implicitly that the concept of allowing liability only where there is a *"taking for public purpose,"* although tailored to the first such cases, is an artificial distinction, insofar as the cases have allowed recovery for and special damages for *nuisance* which is not an "inverse condemnation," i.e., is not a taking for public purpose.

The fact such pronouncements involved a municipality rather than a county has been explained in *Miree v. United States*, supra; compare with *Barfield v. Macon County*, 109 Ga. 386, 387(34 SE 596). But the earliest analysis, *Smith v. Floyd County*, 85 Ga. 420 (11 SE 850), concluded that as to the principles of loss of immunity such distinction between county and municipality is not valid.

Moreover, as noted above, the Supreme Court in *Fulton County v. Wheaton*, supra, has recognized a lack of real distinction between the relative postures of city and county with respect to responsibility for maintaining a nuisance; and specifically stated that a county's liability does not "arise solely" from damages caused by a *public taking*, but can arise from "[t]he failure . . . *adequately to maintain* a culvert, resulting in property damage. . . ." (Emphasis supplied.) Id. at 50.

Indeed, the Court of Appeals, anticipating this evolution, held in *Ingram v. Baldwin County*, 149 Ga. App. 422-423 (254 SE2d 429) that "[l]awsuits involving taking or damaging of property under [condemnation laws] may be maintained against counties. *Baranan*, [supra]. While the power to construct a sewer and drainage system is a governmental function, *a county cannot create and maintain such a system as a nuisance which damages private property* without subjecting itself to civil liability. [Cit.]" (Emphasis supplied.)

We conclude from *Ingram* and upon the resolving factors of *Fulton County v. Wheaton*, supra, that a county may be liable in a civil action for the maintaining of a nuisance upon the requisite proof of failure to properly maintain public works, without regard to whether such act is incidental to a taking for public purpose or public improvements; that is without the necessity to prove "inverse condemnation."

2. The question whether the county may be liable only for damages as in a condemnation case is thus settled. According to *Fulton County v. Wheaton*, and see *Smith v. Floyd County*, supra, the rule exposing a city to liability for "any special damages" applies likewise to the county: " 'In a continuing abatable nuisance case, the plaintiff . . . may recover any special damages whether the injury is of a temporary or a permanent nature.' " *City of Columbus v. Myszka*, 246 Ga. at 573 [272 SE2d 302]." *Fulton County v. Wheaton* at 51. See

OCGA § 51-12-3 (b).

Damages for mental distress may be recovered without proof of physical injury, where there is evidence of a reckless disregard for the rights of others or wanton disregard of consequences which may be equivalent to an intentional tort. *Hamilton v. Powell, Goldstein &c.*, 252 Ga. 149, 150 (311 SE2d 818). Moreover, in *Westview Cemetery v. Blanchard*, 234 Ga. 540, 543 (216 SE2d 776), the Supreme Court held: "Where there is a physical injury or pecuniary loss, compensatory damages include recovery for accompanying 'mental pain and suffering' even though the tortious conduct complained of is merely negligent.' " See also *Montega Corp. v. Hazelrigs*, 229 Ga. 126 (189 SE2d 421). Compare *Chapman v. Western Union Tel. Co.*, 88 Ga. 763 (15 SE 901).

3. Appellant county's argument that attorney fees cannot be recovered by Orwig because damages are available only as in condemnation cases, is likewise without merit; it was error to exclude such attorney fee damages from recovery as may be otherwise properly proved and allowed, inasmuch as this case is not governed by condemnation law. *Fulton County v. Wheaton*, supra.

All of this is a matter of proof for the jury under appropriate instructions. The trial court did not err in submitting the case to the jury on the question of the county's maintenance of an abatable nuisance, but erred in refusing to allow the jury to consider the question of an award of damages for mental pain and suffering or emotional distress and attorney fees. This point of error alone subsumes the entire case; therefore, the general verdict must be reversed and new trial granted.

4. In *Ingram v. Baldwin County*, supra at 422-423, this court held: "[A] single instance of backup of sewage into a private home would not be sufficient to create a nuisance for which liability would attach. [Cit.] 'The whole idea of *nuisance* is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury. . . . A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated.' [Cit.]"

The trial court erred in failing to charge the jury properly on this fact: that the county, which did not put the metal rod obstruction in its main sewer line, could not be liable for failure to maintain its sewer system under a nuisance theory (or otherwise) unless and until it had notice of the problem, which apparently first announced itself here in the form of the backup of thousands of gallons of raw sewage in Mrs. Orwig's home on the first occasion.

"[J]oint participants in the creation of a nuisance are *not* jointly and severally liable for the full total of plaintiff's damages, but only for their individual parts." *Gilson v. Mitchell*, supra at 328. That

statement refers to separate and divisible injuries in the creation and maintenance of a nuisance involving two or more participants. Id. pp. 324-325. DeKalb County did not put the metal rod obstruction in its sewer; Georgia Power did. Thus if the county had no notice of the defect in its sewer until after the first sewage flooding of Mrs. Orwig's home, the county cannot be liable for having caused that incident. The county can be liable only for not having abated the nuisance; that is, it is liable only for the second sewage backup. *Ingram*, supra.

The trial court did not adequately instruct the jury on these facts and principles, but only charged that it should award Mrs. Orwig *"the amount of damages caused by DeKalb County."* The jury had no guidance as to how, or why, to consider only the county's liability for the second backup, as being discreetly different from the damages caused by the first backup. On retrial, the trial court should tailor the jury charge to the evidence in the case, consistent with what is said here.

5. DeKalb County complains that the trial court, granting plaintiff's motion in limine, would not allow evidence that Georgia Power had paid Mrs. Orwig $30,000 in exchange for a release of liability. Further, the county asserts that the holding in *Gilson*, supra, is incorrect, and that the release of Georgia Power, as a joint tortfeasor, operated as a release of the county. The *Gilson* analysis is correct, especially in this case, for the two creators of this continuing nuisance were not joint tortfeasors, but were independent actors, each liable only for such portion of the harm as its contribution to the harm bears to the total damage. The independent acts would seem easy enough to separate. Georgia Power caused the first sewage backup by driving a metal rod into the sewer; the county may be liable (and this jury so found) for the damages arising out of the second backup, which was a nuisance unabated. In these circumstances as a matter of fact, the release of Georgia Power for its liability did not operate to release the county for its own.

Accordingly, there was no reason, and it would have been error, to admit evidence of Georgia Power's payment for purposes of apportioning what was apparently clearly separate and did not constitute multiple satisfactions for a single injury. *Gilson* at 351; see *Posey v. Med. Center-West*, 257 Ga. 55, 65 (354 SE2d 417); *Thompson v. Milam*, 115 Ga. App. 396, 397 (154 SE2d 721).

Neither was the Georgia Power payment admissible under the general rule of OCGA § 51-12-1 (b), allowing evidence of collateral source income, because these incidents occurred prior to the effective date of that statute. *Polito v. Holland*, supra.

6. Appellant county contends the trial court erred in disallowing evidence of the county's having sent notice to Mrs. Orwig, after the first sewage backup, that a county ordinance required her to install a

backup valve in her sewer system, and that if she had done so, the second sewage backup would not have occurred. Appellant county concedes that the evidence of these facts was not included in its original pretrial pleadings, and concedes the trial court therefore has some discretion in deciding whether to admit such evidence, but neither the record nor appellant's explanation as to why the evidence was not admitted clearly shows what happened here, and why the evidence was excluded. In any case, a new trial will render these questions moot or else resolve them to a level fit for appellate review.

Cross-appellant Orwig's contention that this ordinance is unconstitutional is not properly before us, such matters being for the Supreme Court. Ga. Const., Art. VI, Sec. VI, Par. II.

7. In her cross-appeal, Mrs. Orwig contends it was error for the trial court to instruct the jury to disregard testimony that Mrs. Orwig was compelled to use up her entire retirement savings to repair her house and was unable to restore the house for lack of funds. This evidence, properly presented, is relevant on the issue of mental emotional distress, for which we have held she can recover damages. As to the admissibility and relevance of evidence in general, even doubtful evidence, see *Sprouse v. State*, 242 Ga. 831 (252 SE2d 173); and OCGA § 24-2-1; and see *Williams v. State*, 153 Ga. App. 890 (267 SE2d 305).

All other complaints are rendered moot by our reversal and order for new trial, or else are abandoned for failure to argue.

*Judgment reversed. Banke, P. J., and Cooper, J., concur.*

### On Motion for Rehearing.

Cross-appellant Gwen Orwig seeks rehearing on the question of DeKalb County's liability for creating a nuisance by failing to clean up and restore Mrs. Orwig's residence after the first sewage backup. We held, per *Ingram v. Baldwin County*, 149 Ga. App. 422 (254 SE2d 429) that since the county did not create the first sewage backup, it could not be liable for damages as for nuisance on that incident. However, Mrs. Orwig goes further and asserts that the county's subsequent *refusal to remove the noxious filth and problems* created by that first backup *amounted to the maintenance of a nuisance by the county*. We understand fully Mrs. Orwig's contentions on this point, and if she can show that DeKalb County had a duty to clear her home of the problem caused by the first sewage backup (which, apparently was caused by Georgia Power), then she may collect for its refusal to clean up. But the lingering problem caused by the first incident is not itself a "nuisance maintained by the county" unless the county had a duty to remove it. It is simply the result of the first sewage backup, and the fact that it was sewage that came from DeKalb's lines does

not make it actionable as an abatable nuisance unless DeKalb had an obligation to remove it in the course of its duty to maintain sewer lines. We assume this will be a matter of proof.

*Motion for rehearing denied.*

DECIDED JUNE 11, 1990 — REHEARINGS DENIED JUNE 21, 1990 AND JULY 9, 1990 — CERT. APPLIED FOR.

*Johnson & Montgomery, Nisbet S. Kendrick III*, for appellant. *Gail C. Flake*, for appellee.